**NEREIDA RIVERA O'REILLY, Plaintiff**

**v.**

**BOARD OF ELECTIONS, ST. CROIX DISTRICT, ADELBERT M. BRYAN, LILLIANA BELARDO de O'NEAL, RUPERT W. ROSS, JR., GLENN WEBSTER, LISA HARRIS-MOORHEAD, RAYMOND J. WILLIAMS, ROLAND MOOLENAR (all named in their official capacity only) and the GOVERNMENT OF THE VIRGIN ISLANDS, Defendants**

**ALICIA "CHUCKY" HANSEN, Intervenor**

SX-14-CV-461

Superior Court of the Virgin Islands

Division of St. Croix

December 24, 2014

118

JOEL HOLT, ESQ., Quinn House, Christiansted, USVI, *Attorney for Plaintiff.*

ERIKA M. SCOTT, ESQ, Assistant Attorney General, Christiansted, USVI, *Attorney for Defendants.*

LEE ROHN, ESQ., Christiansted, USVI, *Attorney for Intervenor*.

WILLOCKS, *Administrative Judge*

## MEMORANDUM OPINION

(December 24, 2014)

**THIS MATTER** is before the Court on Plaintiff Nereida Rivera O'Reilly's (hereinafter "Plaintiff" or "O'Reilly") Action for Mandamus, Permanent Injunction, and Declaratory Relief against Defendants, Board of Elections, St. Croix District, *et al.* (hereinafter "Defendants" or "the Board"), filed December 8, 2014. Senator Alicia "Chucky" Hansen (hereinafter "Hansen") moved to intervene on December 10, 2014. The Court granted Hansen's Motion by Order entered on December 11, 2014. For the reasons set forth below, the Court shall grant Plaintiffs Request for a Writ of Mandamus.

### FACTS AND PROCEDURAL HISTORY[1]

In 2008, Hansen was convicted of three counts of willful failure to file an income tax return for the 2002, 2003, and 2004 tax years. Under the Revised Organic Act, persons who have been convicted of a felony or crime of moral turpitude, and have not been pardoned, are ineligible to be a member of the legislature. 48 U.S.C. § 1572(b). Hansen, however, served as a member of the 29th Legislature and the 30th Legislature despite her convictions. On May 7, 2014, Adelbert M. Bryan (hereinafter "Bryan"), Chair of the St. Croix Board of Elections, filed a Complaint with the Supervisor of Elections, Caroline F. Fawkes (hereinafter "Fawkes") regarding Hansen's eligibility to sit as a member of the Legislature. On May 13, 2014, Hansen filed nomination papers for the 2014 elections. Fawkes certified Hansen's candidacy, finding that Hansen met the qualifications to serve as a Senator.

On May 19, 2014, Bryan filed a petition with the Superior Court arguing that Hansen's candidacy should not have been certified by Fawkes, because Hansen had been convicted of a crime of moral turpitude. Hansen moved to intervene on June 4, 2014 and filed a motion to dismiss for lack of subject matter jurisdiction. Fawkes moved to

---

[1] These facts are based upon the facts found in *Bryan v. Fawkes*, 61 V.I. 416 (V.I. 2014).

122

dismiss Bryan's petition on July 1, 2014. On July 30, 2014, the Superior Court issued a final judgment dismissing Bryan's petition on grounds that Hansen's convictions were not for crimes of moral turpitude.

Bryan appealed the decision of the Superior Court on August 4, 2014. On August 28, 2014, the Supreme Court of the Virgin Islands reversed the Superior Court's order based on its finding that Hansen's conviction for willful failure to file tax returns was indeed a crime of moral turpitude, making her ineligible to serve in the 31st Legislature. On September 2, 2014, Fawkes informed Hansen that her name would be removed from the election ballot.

On September 3, 2014, the Governor of the Virgin Islands pardoned Hansen's three convictions; and the next day Hansen attempted to submit new nomination papers. As a result of Hansen's submission of new nomination papers, additional litigation ensued in both the Superior Court and the federal District Court. The litigation ultimately made its way back to the Supreme Court. Based on the Supreme Court's ruling in *Bryan v. Fawkes*, 61 V.I. 416 (V.I. 2014), Hansen's name was permanently removed from the 2014 election ballot. As a result, the only means Hansen had to get elected to the 31st Legislature was through a write-in campaign.

On November 15, 2014, Plaintiff was re-elected to the Legislature of the Virgin Islands. Hansen, however, was not re-elected during the 2014 election cycle based on the initial counting of ballots. Hansen requested a recount on November 21, 2014. The Board granted Hansen's request but, according to O'Reilly, granted it outside the time period required by Title 18, Section 629(b) of the Virgin Islands Code. Compl. at ¶ 9. The recount commenced on December 4, 2014.

O'Reilly filed the instant action against Defendants on December 8, 2014 to bar the Board from recounting the write-in votes for Hansen. In her Complaint, O'Reilly alleges that the Board "failed to provide a list showing the number of ballots it declared void as well as the number of blank ballots cast for a candidate, as required by Title 18, Section 625, in order to fully inform the candidates of the election results." Compl. at ¶ 6. O'Reilly further alleges that Hansen is not a candidate who is entitled to seek a recount and that while recounting Hansen's votes, the Board changed its method of counting the votes, allowing ballots with any mark for Hansen to count even if the bubble on the ballot was not marked. Compl. at ¶¶ 6 and 11. Finally, O'Reilly claims that the Board failed to

hold the recount within the ten day time period required by Title 18, Section 629(b) of the Virgin Islands Code. Compl. at ¶ 13.

On December 9, 2014, O'Reilly filed her Motion and Memorandum in Support of Request for Mandamus Relief and/or Other Equitable Relief. A hearing was scheduled in this matter for December 11, 2014, by Order entered December 10, 2014. Hansen filed an Emergency Motion to Intervene and a Motion for Continuance on December 10, 2014. The Court granted Hansen's Motion to Intervene and denied the Motion for Continuance. At the December 11, 2014 hearing, the Court continued the matter to December 15, 2014, to give the parties additional time to prepare.

On December 15, 2014, Hansen filed a Notice of Removal. The Court, however, continued with the hearing scheduled based on its interpretation of the Virgin Islands Supreme Court cases. The Plaintiff was in agreement with the Court's interpretation. Counsel for Hansen came before the Court, on behalf of Hansen, after receiving notice that the Court would proceed with the hearing. The Court heard Hansen's arguments concerning the removal issue; and as a result of Hansen's arguments, O'Reilly removed her due process and equal protection claims. Counsel for the Board adopted the arguments raised by Hansen.

Deputy Supervisor for the St. Croix District of the Election System, Genevieve Whitaker (hereinafter "Whitaker"), Vice-Chair of the St. Croix District Board of Elections, Lilliana Belardo de O'Neal (hereinafter "de O'Neal"), and St. Croix District Board Member Lisa Harris Moorhead (hereinafter "Moorhead") all testified at the December 15, 2014 hearing. Both de O'Neal and Moorhead testified that Hansen's petition for a recount was not granted within the three day statutory deadline. According to Moorhead, although Hansen's petition was filed on November 21, 2014, the Board did not receive the petition until November 24th. The Board voted to allow Hansen to have a recount on November 26, 2014. De O'Neal testified that Hansen was not responsible for the delay in the Board's acceptance of her petition. Both de O'Neal and Moorhead also testified that on November 3, 2014, the Joint Board adopted a policy to honor the intent of the voter when counting ballots for write-in votes. According to de O'Neal, the St. Croix District Board also agreed to adopt the Joint Board's policy of honoring voter intent for the recount of Hansen's vote. None of the witnesses could testify to whether the Board's Rules and Regulations had been properly promulgated.

124

A second hearing in this matter was held on December 17, 2014. The first witness to testify on that day was St. Croix District Board Member Raymond Williams (hereinafter "Williams"). Williams testified that he did vote against granting Hansen's petition, because the Board's decision regarding Hansen's petition would not be made within the three-day statutory deadline. The St. Croix District Board's Administrative Assistant, Terrell Alexander (hereinafter "Alexander"), also testified at the December 17, 2014 hearing. According to Alexander's testimony, there was a question regarding whether Hansen's petition was received on November 21, 2014; however, the Board did not receive the petition on that day. Alexander testified that the first time the Board members received Hansen's petition was on November 24, 2014.

Hansen was the last person to testify at the December 17, 2014 hearing. Hansen testified that she was present at the Board's November 26, 2014 meeting and that, at that meeting, the Board stated that she was entitled to a recount. According to Hansen, she was told repeatedly by Williams that she should take the matter to Court because the time had passed to make a decision on her petition. No notice was ever given that her petition for a recount would be denied, so Hansen stated that she relied on the Board's statement that she was entitled to a recount.

At the December 17, 2014 hearing, Hansen made an oral motion to dismiss based on O'Reilly's lack of standing due to her removal of her Equal Protection and Due Process claims. The Court took the matter under advisement. On December 22, 2014, O'Reilly filed an Amended Complaint and Hansen filed a Response Brief in Opposition to O'Reilly's Petition for Mandamus. The next day, the Board filed a notice of joinder adopting the arguments raised in Hansen's Brief in Opposition to O'Reilly's Petition for Writ of Mandamus.

The final hearing was held on December 22, 2014 and the defense rested. At the hearing, Fawkes testified that as the Supervisor of Elections, she attended the district board meeting on December 3, but did not participate in the recount. She received Hansen's petition on November 21, 2014, time and date stamped the document. The following day, she directed an employee to hand the petition to District Chairman of the Board Bryan. On Monday, November 24, 2014, the Board received a copy

125

of the petition by e-mail. As of December 21, 2014, the tabulation of write in votes is complete and the certification process is in progress.[2]

## STANDARD

■ This matter is before the Court for a writ of mandamus pursuant to Title 5, Section 1361 of the Virgin Islands Code "or other emergency relief as appropriate, including injunctive relief pursuant to Rule 65." (Pl.'s Mot. for Mandamus Relief and/or Equitable Relief 1).[3] Though Injunction and Writ of Mandamus are similar in nature, they have different and separate characteristics. A Writ of Mandamus is essentially an affirmative injunction.[4] It is "a drastic remedy that a court should grant only in extraordinary circumstances in response to 'an act amounting to a judicial usurpation of power.'" *Birdman v. Office of the Governor*, 677 F.3d 167, 174, 56 V.I. 973 (3d Cir. 2012) (citations and internal quotation marks omitted). The writ may issue only if, inter alia, the petitioner has a "clear and indisputable" right to relief. *Id.* (citation omitted). Further, the Courts have held that a Writ of Mandamus "should only issue if there are no other means of vindicating rights." *Weems v. Petersen*, 19 V.I. 212, 214 (D.V.I. 1982) (citations omitted).

For a Writ of Mandamus to be issued, three elements are required: "(1) clear right in the plaintiff for the relief sought; (2) a plainly defined and peremptory duty on the part of the defendant to do the act in question; and (3) no other adequate remedy available." *Richardson v. V.I. Housing Auth.*, 18 V.I. 351, 356 (D.V.I. 1981).

---

[2] Plaintiff argues that there is no basis for having a recount because the Board never voted to accept Hansen's petition. (Pl.'s Post Hearing Memo 3). However, this is not an issue because the Court has determined that Hansen is not entitled to a recount.

[3] Title 5, Section 1361(a) provides:

> In an appropriate action, or upon an appropriate motion in an action, under the practice prescribed in the Federal Rules of Civil Procedure and in this title, the district court may issue a mandatory order to any inferior court, corporation, board; officer, or person, to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station. Although such order may require the court, corporation, board, officer, or person to exercise its or his judgment, or proceed to the discharge of any of its or his functions, the order shall not control judicial discretion. The order shall not be issued in any case where there is a plain, speedy, and adequate remedy in the ordinary course of the law.

[4] *Goodwin v. St. Thomas-St. John Bd. of Elections*, 43 V.I. 89 (V.I. Terr. Ct. 2000). *See also Democratic Party of Virgin Islands v. Bd. of Elections, St. Thomas-St. John*, 649 F. Supp. 1549, 22 V.I. 465 (D.V.I. 1986).

■ In issues involving election matters and legal actions to correct errors by the Board of Elections, "a petition of writ of mandamus is the proper legal action to correct errors made by the Elective Boards." *Richardson v. Electoral Boards*, 1 V.I. 301, 350 (D.V.I. 1936). The Courts generally used the vehicle of a Writ of Mandamus when addressing election matters. In this, we follow other jurisdictions where post-election challenges are generally decided by mandamus actions. *Mahoney v. Board of Supervisors of Elections*, 205 Md. 380, 109 A.2d 110 (Ct. App. 1954).

In the case at hand, this Court finds that if O'Reilly is entitled to prevail, mandamus relief would be appropriate; since the Court would be in a difficult position to shape any injunctive relief which would result in a solution to the problem, without creating undue delay. This is because the Board has already certified the results of the election, and there is nothing left to enjoin as to them. Therefore, the affirmative relief of mandamus is more appropriate.

## DISCUSSION

The history of the Virgin Islands Election System is one that is replete with legal challenges. More often than not, the Court finds itself in the position of having to steer the election system of the Virgin Islands into safe harbors that protect the integrity of the election system and the intent of the voters. These challenges have gone back to the days of David Hamilton Jackson.[5]

Rather than the Virgin Islands Legislature updating and revising the Election Code in its entirety, the judicial branch has had to interpret the Election Code when matters have come before it on a piecemeal basis. The matter currently before this Court is no different.[6]

The issues before the Court are: (1) whether Hansen has standing to seek a recount under Title 18 of the Virgin Islands Code; (2) whether the fact that the time for a recount has expired bars the Board from

---

[5] *Richardson*, 1 V.I. at 301.

[6] In the history of the Virgin Islands Legislature, no person has become a Senator based upon write-in votes. This may be the reason why the election laws do not folly address the issue of write-in votes.

conducting a recount; and (3) whether the recount is being done improperly.[7] The Court will address each of Plaintiff's arguments in turn.

## I. Hansen Does Not Have Standing to Seek a Recount

Plaintiff argues that Hansen does not have standing to seek a recount because she is not a "candidate" within the meaning of Title 18 of the Virgin Islands Code. Title 18, Section 1(a) states "as used in this title, unless the context requires a different construction, application or meaning: 'candidate' includes a candidate for nomination and a candidate for election." According to Plaintiff, this definition, when read in the context of Title 18, Section 625, does not encompass persons whose names are not already on the ballot. Section 625 reads in pertinent part:

> At elections, the number of votes cast for each candidate by each political party or body by which he has been nominated, and for each independent candidate, shall be separately stated. In specifying any votes cast for persons whose names are not on the ballot, the election officers shall record any such names exactly as they were written or pasted to the ballot.

Plaintiff further argues that Section 625 should be taken to mean that persons not on the ballot are not "candidates" as defined by Title 18.

In their Opposition, Defendants assert that Hansen is a "candidate" for purposes of seeking a recount. To support this assertion, Defendants cite Title 18, Section 1(a) and the definition of "candidate" listed on the "Frequently Asked Questions" page of the www.vivote.gov website. The Board argues that Hansen is "clearly a candidate" and cites to information found on the Election System at www.vivote.gov. The information on the Election System website reads as follows:

## Candidates:

## Q. When am I a candidate?

Candidate means an individual who seeks nomination for election, or election, to any elective office of this Territory, whether or not such

---

[7] At the December 15, 2014 hearing, O'Reilly chose to waive the issue regarding the violation of her rights, thus the Court will not address this issue.

individual is elected and whether or not such individual has formally or publicly announced his candidacy. However, in order to be a "candidate" a person must have:

- filed for an elective office with the Board of Elections;
- received contributions;
- made expenditures; or
- authorized another to receive contributions on his behalf or make expenditures in support of his candidacy whether or not a specific office has been named for which the person is running.

Defendants' argument that the definition of "candidate" on the www.vivote.gov website supports the assertion that write-ins are candidates is unpersuasive. The Board apparently uses the definition found in Title 18, Chapter 29, Section 902(1) in its website. This section reads as follows:

(1) 'Candidate' means an individual who seeks nomination for election, or election, to any elective office of this Territory, whether or not such individual is elected and whether or not such individual has formally or publicly announced his candidacy. However, in order to be a 'candidate' a person must have:

(A) filed for an elective office with the Board of Elections;

(B) received contributions;

(C) made expenditures; or

(D) authorized another to receive contributions on his behalf or make expenditures in support of his candidacy whether or not a specific office has been named for which the person is running.

This definition, however, is found in Title 18, Chapter 29. Under Chapter 29, the heading reads as follows: "Disclosure and Limitations on Campaign Contributions." The purpose of Chapter 29 is found in Section 901(a), which states:

The Legislature declares that it is the purpose of this chapter to:

(1) require the timely disclosure of contributions to candidates and committees supporting or opposing candidates campaigning for public office;

(2) require the timely disclosure of expenditures by candidates and committees supporting or opposing candidates campaigning for public office; and

(3) limit the amounts which may be contributed to such candidates and committees by individuals, corporations, labor organizations and other committees.

■ Clearly, the definition of candidate found under Chapter 29 is limited to the confines of Chapter 29. To interpret it any differently would result in a bizarre result. For example, one can envision a person filing with the supervisor of elections as a candidate; and although that person does not satisfy the requirements as a candidate, that person can go and solicit funds and raise monies for their own personal benefits.

■ As stated above, Title 18, Section 1(a), merely states that "candidate" includes a candidate for nomination and a candidate for election. Moreover, it is this Court's duty to interpret the law; and to do so, it must look at the text of the statute. The text of Title 18, Section 1(a) read together with the text of Title 18, Section 625 does not support the definition of "candidate" provided on the www.vivote.gov website.

For further support, Defendants cite to Title 18, Section 523 which delineates the requirements for the approval of an electronic voting system. Section 523(6) reads: "No electronic voting system shall be approved for use in the Virgin Islands unless it is so constructed that: It provides a method for write-in or paste-in voting."

■ This argument is misplaced. The purpose of Title 18, Section 523(6) is to ensure that upon transition from written ballots to electronic voting, a space will be reserved for "write in voting and posting." Of interest, is that the section does not refer to this section as for write in candidates or posting for write in candidates. Hence, even if this Court was to find this position relevant, it is of little assistance to the purported argument by the Board.

Defendants also direct the Court to the Supreme Court of the Virgin Islands' *Bryan v. Fawkes* Opinion. In *Bryan v. Fawkes*, 61 V.I. 416 (V.I. 2014), the Supreme Court used the term "write-in candidacy" to denote an option Hansen had to gain access to the ballot in the 2014 election. According to Defendants, the Supreme Court's reference to Hansen as a candidate and its use of the term "write-in candidacy" runs contrary to O'Reilly's argument that Hansen has no standing to request a recount.

> [I]f Hansen were to mount a write-in candidacy — as she is entitled to do so under Virgin Islands law — and be successfully elected by the voters, the August 29, 2014 order would not serve as an impediment to her certification as a winner of the general election and eventual swearing-in as a member of the 31st Legislature.

Defendants' argument that the Supreme Court of the Virgin Islands supports the contention that Hansen is a candidate is also without merit. In *Fawkes*, the Supreme Court did not address the wording of Sections 625 or 629. The Supreme Court's only reference to Title 18 in the context of write-in voting was its recognition that the Virgin Islands affords Hansen the opportunity to seek election through write-in votes. *Fawkes*, 61 V.I. at 444. Although the Supreme Court may have referred to Hansen as a candidate, this does not imply that the Supreme Court intended for that reference to mean that a write-in is a "candidate" for purposes of seeking a recount.

The Board further argues that even though the Virgin Islands Supreme Court ordered the removal of Hansen's name from the 2014 General Election Ballot, she is still a candidate, and could become a senator if she receives the necessary votes. *Id.* The above statement does not address any issue currently before the Court. The issue is not whether Hansen could sit as a Senator if she received the necessary votes, but, rather, if Hansen as a write-in is entitled to a recount.

The Board further cites two other passages from the *Fawkes* Opinion. The first being:

> . . . election officers may simply add any early and absentee votes cast for Hansen from ballots including Hansen's name as a candidate prior to her removal to any write-in votes cast for Hansen after the removal is effectuated, and calculate Hansen's vote count based on that cumulative total.

*Id.* at 468. The second is a response by the Virgin Islands Supreme Court to Hansen's "Emergency Motion to Reconsider the Order of October 24, 2014," which reads as follows:

> Fawkes intends to leave Hansen's name on the ballot but simply not count any votes cast for her or to take any action that would disenfranchise voters or otherwise be contrary to this Court's October 2,

131

2014 opinion, the appropriate avenue for relief would be through an election contest as may be authorized by Virgin Islands law.

The Board then concludes that:

> [i]t defies logic that the Virgin Islands Supreme Court would identify an election contest as "an appropriate avenue for relief" for any challenge Hansen could pose to the outcome of the 2014 general election, but then preclude her from taking advantage of the process identified in 18 V.I.C. § 625.

As stated before, the issue of Hansen being a candidate and thus entitled to a recount was never before the Virgin Islands Supreme Court. Ergo, if the Virgin Islands Supreme Court did not contemplate the issue of standing for Hansen for a recount, it would not afford such a remedy.

The issue of whether a person who gains access to the ballot through write-in votes is considered a "candidate" is one of first impression in the Virgin Islands. In fact, it does not appear that the issue has been presented in any United States jurisdiction. Some state statutes do not explicitly give guidance to the issue, while others either explicitly include or exclude write-ins as candidates. Other state statutes do not explicitly address whether a write-in is a candidate, but draw distinctions between write-in votes and votes for other candidates.[8] Because there is no explicit

---

[8] This Court conducted a survey of about fifteen states and also reviewed the U.S. Code for guidance on how other jurisdictions treat persons whose names are written onto the ballot. New Jersey and Wisconsin do not explicitly give guidance to the issue of whether a write-in is a candidate. New Jersey allows voters to write-in or paste in names for "any person or persons for whom [they desire] to vote whose name or names are not printed upon the ballot for the same office or offices." N.J. STAT. ANN. § 19:15-28 (West). Any "candidate" in New Jersey may apply to the Judge of the Superior Court for a recount, however, the statute does not explicitly state whether write-ins are considered "candidates." N.J. STAT. ANN. § 19:28-1 (West). Wisconsin also allows "any candidate voted for at any election" to petition for a recount, although it is unclear whether Wisconsin permits write-in voting in general elections. WIS. STAT. ANN. § 9.01 (West). The U.S. Code explicitly includes write-ins as candidates. See 2 U.S.C.A. § 381 (West). Florida also explicitly includes write-ins as candidates. Florida law defines the term "candidate" to include "[a]ny person who seeks to qualify for election as a write-in candidate." FLA. STAT. ANN. § 97.021(5)(b) (West). In Maryland, a candidate is defined as "an individual who files a certificate of candidacy for a public party or office." MD. CODE ANN., Election Law, § 1-101(1)(1) (West). Alabama, Alaska, Arkansas, Delaware, Maine, Oregon, and Texas all make some sort of distinction between either some or all write-in votes/candidates and candidates whose names are printed on the ballot. For example, in Texas, write-in voting is prohibited in run-off elections. TEX. ELEC. CODE ANN.

language in Title 18, nor any case law, to direct this Court on how to resolve the issue before it, this Court must use canons of statutory instruction for guidance in interpreting the words of our Elections statute.

Title 1, Section 42 of the Virgin Islands Code states "[w]ords and phrases shall be read with their context and shall be construed according to the common and approved usage of the English language." As mentioned above, Title 18, Section 625 reads:

> At elections, the number of votes cast for each candidate by each political party or body by which he has been nominated, and for each independent candidate, shall be separately stated. In specifying any votes cast for persons whose names are not on the ballot, the election officers shall record any such names exactly as they were written or pasted to the ballot.

Candidate is defined to "include a candidate for nomination and a candidate for election." The definition of candidate is inclusive and not exclusive. In other words, the phraseology "to include" appears on its face to include other persons besides candidates for election and candidates for nomination. Title 18, Section 1(a) also defines the terms "election" and "nomination." " 'Election' means any general or primary election, unless otherwise specified or indicated as in the term 'primaries and elections' where the intention is to refer to primary elections and general elections." *Id.* The term "nomination" is defined as "the selection, in accordance with the provisions of this title, of a candidate for public office authorized to be voted for at an election." *Id.* The Court is cognizant that these

---

§ 146.002 (West). Maine law distinguishes between declared write-in candidates and undeclared write-in candidates. Declared write-in candidates are "treated the same as any candidate whose name is printed on the ballot." ME. REV. STAT. ANN. tit. 21-A § 737-A. In Alaska, write-in votes may not be individually counted unless they meet the requirements of ALASKA STAT. ANN. § 15.15.365 (West). In Oregon, write-in votes are tallied together unless "the total number of write-in votes for candidates for the same nomination or office equals or exceeds the number of votes cast for any candidate for the same nomination or office on the ballot who appears to have been nominated or elected." OR. REV. STAT. ANN. § 254.500 (West). In those cases, "the county clerk shall tally all write-in votes cast for the office to show the total number of votes cast for each write-in candidate." *Id.* Iowa, Rhode Island, and Virginia all allow write-ins to request a recount of their votes, however, in Virginia, write-in candidates may only appeal for a recount under certain circumstances. VA. CODE ANN. § 24.2-800(B). Rhode Island has a similar practice. Under Rhode Island law, write-in candidates must be eligible to request a recount. R.I. GEN. LAWS ANN. § 17-19-37.2 (West 1956). Finally, Hawaii prohibits write-in voting altogether.

terminologies do not truly clarify the definition of a candidate, but perhaps leads to more confusion. Thus, the Court must review and analyze Title 18 in its entirety to determine the meaning of candidate.

Pursuant to Title 18, Section 629(a) of the Virgin Islands Code, any candidate may file a petition for a recount. The pertinent part of Title 18, Section 629(a) states: "A petition for a recount may be filed by any candidate in a primary or election who believes that there has been fraud or error committed in the canvassing or return of the votes cast at such primary or election." Hence, the cog of this wheel is whether Hansen qualifies as a candidate under Title 18 of the Virgin Islands Code.

■ Instead of referring to "persons whose names are not on the ballot" as "write-in candidates" or "candidates whose names are not on the ballot," the Legislature specifically uses the word "persons." This gives great weight to O'Reilly's argument that persons who receive write-in votes are not "candidates," as defined by Title 18. In addition, the word "write-in candidate" is never mentioned in Title 18 of the Virgin Islands. The only other references to write-in votes is in Section 523, which only mentions it in the context of the electronic voting system, and Section 584, which mentions it in the context of how voters are to prepare ballots. The omission of the term "write-in candidate" in Section 625 shows an intent by the Legislature that persons who receive write-in votes and candidates who receive votes are not one in the same.

■ In *Burdick v. Takushi*, 504 U.S. 428, 112 S. Ct. 2059, 119 L. Ed. 2d 245 (1992), the Supreme Court of the United States held that Hawaii's prohibition on write-in voting did not unreasonably infringe upon its citizens' rights under the First and Fourteenth Amendments. The U.S. Supreme Court's ruling in *Burdick* supports its earlier rulings which recognized that States have the power to regulate their own elections. *See Sugarman v. Dougall*, 413 U.S. 634, 647, 93 S. Ct. 2842, 37 L. Ed. 2d 853 (1973); *see also Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 217, 107 S. Ct. 544, 93 L. Ed. 2d 514 (1986). In that same manner, it is apparent that States[9] also have the power to regulate the manner in which write-in votes are counted and also to make distinctions between those whose names are already printed on the ballot and those whose names are written in by voters.

---

[9] Although the U.S. Virgin Islands is a territory, not a state, it has also been granted the power to regulate its own elections through the Revised Organic Act of 1954.

■ "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat. Bank v. Germain,* 503 U.S. 249, 253-54, 112 S. Ct. 1146, 117 L. Ed. 2d 391 (1992). The fact that the Virgin Islands allows voters to cast write-in votes does not imply that write-ins are "candidates" nor does it imply that write-ins have the right to request a recount. As the U.S. Supreme Court stated in *Burdick* "the function of the election process is 'to winnow out and finally reject all but the chosen candidates,' not to provide a means of giving vent to 'short-range political goals, pique, or personal quarrel[s].' " *Burdick,* 540 U.S. at 438 (citations omitted). Like statutes in several other jurisdictions, the Virgin Islands Code has drawn a distinction between write-ins and persons whose names are printed on the ballot. Those persons whose names are printed on the ballot are candidates granted a right to request a recount of their votes. This interpretation of the Virgin Islands Election statute affords the Board of Elections the opportunity to operate "elections fairly and *efficiently.*" *Id.*

## II. The Remaining Issues Are Not Moot

■ Though the Court has ruled that Hansen was ineligible to request a recount, there are still the remaining issues. These unresolved issues are exceptions to the mootness doctrine and will be addressed by the Court. As stated by the Virgin Islands Supreme Court in *Haynes v. Ottley*, 61 V.I. 547, 559 (V.I. 2014);

> As several courts have observed, "[c]hallenges to election laws are one of the quintessential categories of cases which usually fit this prong because litigation has only a few months before the remedy sought is rendered impossible by the occurrence of the relevant election." *Lawrence v. Blackwell*, 430 F.3d 368, 371 (6th Cir. 2005); *Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1095 n.4 (9th Cir. 2003) ("[E]lection cases often fall within the 'capable of repetition, yet evading review' exception to the mootness doctrine, because the inherently brief duration of an election is almost invariably too short to enable full litigation on the merits."); *Clark v. Arakaki*, 118 Haw. 355, 191 P.3d 176, 181-82 (2008) (declining to dismiss appeal of candidate's eligibility even though election had already occurred because "the brief period of time between the filing of [the candidate's] nomination papers and the election" made it likely that similar challenges would

evade meaningful appellate review). This is especially hue of appeals involving purely legal issues — especially those involving questions of public importance — where the opinion rendered would establish a rule governing all elections, rather than only one particular election. *Gresh v. Balink*, 148 P.3d 419, 421-22 (Colo. App. 2006); *Telli v. Snipes*, 98 So.3d 1284, 1285-86 (Fla. Dist. Ct. App. 2012); *Barrow v. Detroit Election Comm'n*, 305 Mich. App. 649, 854 N.W.2d 489, 496 (2014).

Like the issues in the *Ottley* case, the remaining issues in this instant case are a matter of public importance and are issues "in which '[a]n authoritative guide for future controversies is needed.'" *Id.* (citing *Wisnasky-Bettorf v. Pierce*, 965 N.E.2d 1103, 1105 (Ill. 2012)).

### A. It Is Permissible for the Board to Conduct a Recount Despite the Fact that the Time for a Recount Has Expired

All of the parties agree that the time to conduct a recount, pursuant to Title 18 of the Virgin Islands Code, has expired. Title 18, Section 629(b) states "[u]pon the filing of the [recount] petition, the board of elections for the district in which the recount is requested shall decide within 3 days whether the recount shall take place." Section 629(b) further states "[t]he recount shall be held within 10 days after the filing of the petition and shall be public."

O'Reilly argues that because the recount did not commence in a timely manner as mandated by Section 629(b), the time for a recount has expired. According to O'Reilly, the Court should issue an order directing the Board to stop the recount process based on the mandatory language of Section 629(b). Defendants counter that although Section 629(b) contains mandatory language, neither Section 629(b) nor any other section in Title 18 addresses what happens if there is no timely decision made. Defendants contend that the Legislature's intent to create a mandatory statute exists where the Legislature provides that an act must be performed within a fixed time and also delineates the consequence for non-compliance. Because no section of the Code provides a consequence for non-compliance of the deadlines imposed in Section 629(b), Defendants argue that the statute is merely directory in nature.

In *Bryan v. Todman*, 28 V.I. 42 (Terr. Ct. 1992), the Court found that Title 18, Sections 4, 194, 196, 503-506, and 627(a) were directive and

136

not mandatory, notwithstanding the use of the word "shall." The Appellate Division of the District Court of the Virgin Islands affirmed the Territorial Court's ruling, though it expressed its reluctance to base its decision to affirm on the lower court's assertion that " 'shall' as used in the statutory scheme governing the election process is directory and never to be construed in its primary and ordinary sense." *Bryan v. Todman*, No. 1993-0005, 1993 U.S. Dist. LEXIS 21461 (D.V.I. Oct. 29, 1993). In affirming the ruling of the lower court, the District Court also noted that compliance with the aforementioned statutory provisions was not at the discretion of election officials. *Id.*

■ The United States Supreme Court has also provided guidance on interpreting statutes that do not contain a consequence for non-compliance with statutory timing provisions. In *U.S. v. James Daniel Good Real Property*, 510 U.S. 43, 63, 114 S. Ct. 492, 126 L. Ed. 2d 490 (1993), the Supreme Court stated "[w]e have held that if a statute does not specify a consequence for noncompliance with statutory timing provisions, the federal courts will not in the ordinary course impose their own coercive sanction."

During the December 17, 2014 hearing, O'Reilly cited *Smith v. King*, 716 N.E.2d 963 (Ind. App. 1999), to support O'Reilly's assertion that the Court should stop the recount based on the language of Section 629(b). In *Smith,* the Court of Appeals of Indiana found that the Plaintiffs elections contest hearing was held outside of the time allowed by statute; and, as a result, the lower court was divested of jurisdiction to hear the matter.[10] *Id. Smith*, however, is distinguishable from the case at bar for several reasons. In *Smith*, the Court found that there had been no showing of extraordinary or unusual circumstances that could have prevented the hearing from being held in a timely manner. *Id.* at 968. The court also noted that the Plaintiff caused the delay of the hearing. *Id.*

Unlike the situation in *Smith*, in this case there is no dispute that Hansen filed a timely petition for a recount with the Board of Elections. According to testimony from several board members, although the chairman of the Board received Hansen's petition on November 21, 2014, the Board as a whole did not receive the petition until November 24,

---

[10] When *Smith* was decided, Indiana election contests were heard and decided on by the court.

2014. On November 26, 2014, the Board voted to accept Hansen's petition despite the fact that it had not made a decision regarding the petition within the three days allowed by Section 629(b). This decision was made pending the Attorney General's response to the Board's request for guidance on the issue. On December 3, 2014, the Board affirmed their November 26 decision and also decided to begin recounting the votes, despite the fact that the Attorney General still had not provided the Board with a written opinion on the matter. The recount commenced the following day — December 4, 2014, thirteen (13) days after Hansen filed her petition, and ten days after the Board received it.

 ██ As an initial matter, this Court finds that Title 18 does not provide a consequence for any violation of Section 629(b). Although Chapter 27 of Title 18 provides for election offenses and penalties for those offenses, nothing in Chapter 27 provides a penalty for the Board's noncompliance with the deadlines imposed in Title 18. It is clear from the testimony of several witnesses that the Board did not intentionally recount Hansen's votes outside of the statutory timeline. Based on the circumstances of this case, and the fact that Title 18 does not impose a penalty for a violation of Section 629(b), this Court will refrain from imposing its own coercive sanction. Hence, the Court finds that proceeding with a recount, despite the fact that the recount commenced outside of the period provided by statute, is permissible.

### B. The Board's Procedure for Counting Hansen's Votes Is Not Improper

O'Reilly asserts that only votes for "Alicia 'Chucky' Hansen" should be counted in the final tally for Hansen. She bases her argument on Title 18, Section 625. The pertinent part of Section 625 reads "[i]n specifying any votes cast for persons whose names are not on the ballot, the election officers shall record any such names exactly as they were written or pasted to the ballot." According to O'Reilly, this statutory language clearly requires that each name be treated as a separate "person" when tabulating votes. Defendants argue that O'Reilly's interpretation of Section 625 is incorrect because it only pertains to how the Board should record names, not how different variations of a candidate's name should be tallied.

 This Court finds that O'Reilly's interpretation of Section 625 is erroneous. Section 625 is entitled "Statement of votes cast." Hence, this

section of the Elections Code merely provides instruction on how the statement of votes cast for each person should be prepared. The portion of Section 625 that O'Reilly references cannot be read as an instruction for how to tally votes for write-in candidates.

During the December 15, 2014 hearing, Board Members de O'Neal and Moorhead testified that the Joint Board decided before the elections that, when counting votes the intention of the voter should be honored. The Joint Board's decision is supported by Title 18, Section 584. Section 584(c)(1) provides the manner in which to cast a write-in vote.[11] Section 584(d) then provides that

> [i]n any case of doubt or conflict, the marking of the ballot shall be deemed to be valid in such a way that wherever the intention of the voter appears, although the marking may be defective, the ballot shall be deemed to be valid and such intention shall be given effect.

Based on Section 584(d), this Court finds that counting write-in ballots containing different variations of Senator Hansen's name in the final tabulation of her votes is permissible, as long as it can be ascertained that it was the intent of the voter to vote for Senator Hansen.

## C. A Writ of Mandamus Should Be Issued

As stated before, mandamus relief is an extraordinary remedy and should only be issued if there are compelling circumstances. *Richardson*, 18 V.I. at 351. O'Reilly contends that mandamus relief is proper because Hansen is not a candidate entitled to seek a recount. Hansen argues that she is a candidate and she should be allowed to request a recount. The granting of such relief would bar the Board from certifying Hansen's write-in votes. For a Writ of Mandamus to be issued, three elements are required: "(1) clear right in the plaintiff for the relief sought; (2) a plainly defined and peremptory duty on the part of the defendant to do the act in

---

[11] Section 584(c)(1) reads:

At the general elections, an elector shall prepare his ballot in the following manner:
 (1) He may vote for the candidates of his choice for each office to be filled according to the number of persons to be voted for him for each office, by depressing the button(s) opposite the name of the candidate, **or he may insert by pasting, in the blank space provided therefor, any name not already printed on the ballot, and such insertion shall count as a vote without the making of a crossmark (X)**. (Emphasis added).

question; and (3) no other adequate remedy available." *Richardson*, 18 V.I. at 356. The Court will discuss these elements in turn.

First for a Writ of Mandamus to issue, there must clear right in the plaintiff for the relief sought. *Id.* O'Reilly seeks to bar the Board from recounting Hansen's write-in votes. It is clear that O'Reilly has the right to ensure that the Board adheres to the election laws. The Board treats write-ins and candidates the same with respect to recounts. However, the Virgin Islands Code has distinguished between write-ins and persons whose names are printed on the ballot. Since the Board erred in recounting Hansen's votes, O'Reilly has a clear right in requesting mandamus relief.

Second, mandamus relief is proper if there is a plainly defined and peremptory duty on the part of the defendant to do the act in question. *Id.* Mandamus is appropriate when [an] official's duty to act is ministerial in nature and so plain as to be free from doubt. Even where [an] official's responsibilities are in some respects discretionary, mandamus is appropriate if statutory or regulatory standards delimiting scope or manner in which such discretion can be exercised have been ignored or violated. *Donastorg v. Gov't of V.I.*, 45 V.I. 259, 273 (Terr. V.I. 2003) (citing *Silveyra v. Moschorak*, 989 F.2d. 1012 (9th Cir. 1993)). The Virgin Islands Code prescribes the procedures the Board must follow when conducting a recount. In this matter, the statute's language differentiates between a write-in and person's whose names are printed on the ballot or candidates. Title 18, Section 629(a) only states that a petition for a recount may be filed by a "candidate." Here, Hansen, a write-in requested a recount. Because Hansen is a write-in, she is not a candidate and has no right to petition the Board for a recount. Therefore, the Board exceeded the scope of its statutory authority when it allowed Hansen to request a recount. Therefore, mandamus relief is proper.

Third, mandamus relief should be granted if there is no other adequate remedy available. *Richardson*, 18 V.I. at 356. As previously mentioned, the Court is in a difficult position to shape any injunctive relief which would result in a solution to the problem without creating undue delay. Thus, the Board cannot be enjoined because the election results have already been certified. Therefore, since all three elements for issuing a Writ of Mandamus have been satisfied, O'Reilly's request for mandamus relief will be granted.

## CONCLUSION

Based on the foregoing analysis, this Court finds that Hansen is not a "candidate" as defined by Title 18 of the Virgin Islands Code. Because Title 18, Section 629(a) only states that a petition for a recount may be filed by a "candidate," Hansen does not have a right to petition the Board of Elections for a recount of her votes. The Court will grant O'Reilly's request for a Writ of Mandamus and the Board is estopped from acting on Hansen's Petition for Recount and any action taken on her Petition for Recount is null and void. The Court will issue an Order consistent with this Opinion.