**ALICIA "CHUCKY" HANSEN, Appellant/Intervenor, BOARD OF ELECTIONS, ST. CROIX DISTRICT, ADELBERT M. BRYAN, LILLIANA BELARDO DE O'NEAL, RUPERT W. ROSS, JR., GLEN WEBSTER, LISA HARRIS-MOORHEAD, RAYMOND J. WILLIAMS, ROLAND MOOLENAAR (all named in their official capacities only) and THE GOVERNMENT OF THE VIRGIN ISLANDS, Appellants/Defendants**
**v.**
**NEREIDA RIVERA O'REILLY, Appellee/Plaintiff**

S. Ct. Civil No. 2014-0085

Supreme Court of the Virgin Islands

January 8, 2015

LEE J. ROHN, ESQ., Lee J. Rohn & Assocs., LLC, St. Croix, USVI, *For Appellant Alicia "Chucky" Hansen.*

KIMBERLY L. SALISBURY, ESQ., Assistant Attorney General, St. Thomas, USVI, *For Appellants St. Croix District Board of Elections and the Government of the Virgin Islands.*[1]

JOEL H. HOLT, ESQ., Law Office of Joel H. Holt, P.C., St. Croix, USVI, *For Appellee.*

HODGE, *Chief Justice*; SWAN, *Associate Justice*; and HODGE, *Designated Justice.*[2]

## OPINION OF THE COURT

(January 8, 2015)

PER CURIAM. Alicia "Chucky" Hansen appeals from the December 24, 2014 opinion of the Superior Court of the Virgin Islands, which granted

---

[1] Although nominally listed as appellants in the case caption, neither the St. Croix District Board of Elections, the Government of the Virgin Islands, nor the individual board members sued in their individual capacities have filed a notice of appeal with this Court, although they have otherwise participated in this appeal.

[2] Associate Justice Maria M. Cabret is recused from this appeal. The Honorable Verne A. Hodge, a retired judge of the Superior Court, sits in her place by designation pursuant to title 4, section 24(a) of the Virgin Islands Code.

a petition for writ of mandamus filed by Nereida Rivera O'Reilly directing the St. Croix District Board of Elections, its members, and the Government of the Virgin Islands to immediately cease a recount of votes cast for Hansen in the 2014 general election in the District of St. Croix for the office of senator. Specifically, the Superior Court granted mandamus relief based on a finding that Hansen, as a write-in candidate, lacked standing to petition for a recount, but held that it would have denied O'Reilly's petition on the other grounds asserted. O'Reilly has also filed a cross-appeal with this Court, in which she alleges, on numerous grounds, that mandamus relief would nevertheless be warranted even if this Court were to agree that Hansen possessed standing to seek a recount.

For the reasons that follow, we agree with Hansen that the Superior Court erred when it held that she lacked standing to petition the Board of Elections for a recount. However, we also agree with O'Reilly that the Superior Court erred when it implicitly rejected her claim that elections officials unilaterally commenced a recount of Hansen's votes in the 2014 general election without first obtaining authorization from a majority of the Board of Elections, and when it explicitly held that the Board could waive statutory timeliness requirements governing recount petitions. As such, while the reasoning of the December 24, 2014 opinion is rejected for the reasons explained, the judgment and decision reached by the Superior Court in granting the writ of mandamus is affirmed.

## I. BACKGROUND

The 2014 general election took place on November 4, 2014. In May 2014, Hansen filed nomination papers to run as a no-party candidate for a position in the 31st Legislature representing the District of St. Croix. However, for reasons set forth in prior opinions of this Court, her name was removed from the ballot. *See Bryan v. Fawkes (Bryan I)*, 61 V.I. 201 (V.I. 2014); *Bryan v. Fawkes (Bryan II)*, 61 V.I. 416 (V.I. 2014). As a result, Hansen chose to conduct a write-in campaign for the position.

The Board of Elections certified the general election results for the St. Croix District on November 15, 2014. The certified results[3] reflected that

---

[3] Election System of the Virgin Islands, 2014 General Election Certification Report (St. Croix District), http://www.vivote.gov/Election 2014/GEreports/2014 General Election Certification Report St. Croix District.pdf, *archived at* http://perma.cc/D3SC-UMMC. While this Court and the Superior Court may take judicial notice of election results released

the 7th-place finisher in the senate election — O'Reilly — had received 4,755 votes, while Hansen finished in 13th place with 2,089 votes.[4] On November 21, 2014, Hansen petitioned the Board of Elections to order a recount of the senate election pursuant to section 629(a) of title 18 of the Virgin Islands Code. However, while section 629(b) of title 18 of the Virgin Islands Code required it to rule on the recount petition within three days, the Board of Elections did not do so. Instead, the Board of Elections attempted to hold a meeting on the morning of November 26, 2014, which quickly adjourned for lack of a quorum. While another meeting was held later that day to consider the recount petitions of three other individuals,[5] no vote was taken as to whether to grant Hansen's petition for a recount. Instead, the only votes the Board of Elections took that pertained to Hansen were on (1) a motion to allow Hansen, who was present at the meeting, to express her position to the Board on whether she preferred to forego legal action while the Board sought guidance from the Attorney General on whether it retained the authority to act on the petition outside of the three-day requirement, and (2) a motion to obtain an opinion letter from the Attorney General to provide guidance to the Board as to whether it could vote on her recount petition even though the three-day statutory deadline set forth in section 629(b) had lapsed. At its next meeting, held on December 3, 2014, the Board of Elections also did not vote on Hansen's recount petition, but only voted to follow a prior decision of the Joint Board of Elections on how to determine voter intent. (S.A. 135;

---

by the Supervisor of Elections, *see Mapp v. Fawkes*, 61 V.I. 521, 535 n.13 (V.I. 2014) (noting that this Court may take judicial notice of election results released by the Supervisor of Elections) (collecting cases), these documents were also introduced into evidence during the Superior Court proceedings. (*See* S.A. 44.)

[4] The Virgin Islands Legislature is a unicameral legislature consisting of 15 senators, of whom seven are elected from the District of St. Croix, seven are elected from the District of St. Thomas-St. John, and one senator, who must be a bona fide resident of St. John, is elected at large by the entire Territory. 2 V.I.C. § 102. Each district is a multimember district, and as such, the seven candidates in each district who earn the most votes will earn a seat in the Legislature.

[5] The transcript of the November 26, 2014 meeting reflects that the Board considered recount requests filed by Diane Capehart, Roberto James, and Epiphane Joseph. Of these, the Board denied the petition filed by James because he was not a candidate, but granted the petitions filed by Capehart — a candidate for senate — and Joseph, a candidate for the Board of Elections.

293-94.) Nevertheless, the recount of Hansen's write-in votes commenced on December 4, 2014.[6]

O'Reilly filed a complaint in the Superior Court against the St. Croix District Board of Elections, its members acting in their official capacities, and the Government of the Virgin Islands on December 8, 2014. In her complaint, O'Reilly requested that the Superior Court issue a writ of mandamus to stop the recount, on grounds that it was being conducted in violation of Virgin Islands law. Most pertinent to this appeal, O'Reilly alleged that Hansen lacked standing to file a recount petition under 18 V.I.C. § 629(a) because she was purportedly not a "candidate," and that in any case the Board of Elections had never voted to grant her recount petition pursuant to 18 V.I.C. § 629(b). Hansen filed a motion to intervene on December 10, 2014 — which the Superior Court promptly granted — and the Board of Elections and the other defendants filed an opposition to O'Reilly's petition on December 11, 2014.[7]

The Superior Court set the matter for a hearing at 9:00 a.m. on December 15, 2014. At 9:05 a.m., the Superior Court noted that Hansen's counsel was not present despite being served with notice of the hearing, and that an order to show cause would issue but that the hearing would proceed in her absence. The Superior Court began to hear testimony from Genevieve Whitaker — the Deputy Supervisor of Elections for the St. Croix District — but shortly after questioning began the Superior Court announced that Hansen's counsel had filed a notice of removal with the United States District Court of the Virgin Islands. After discovering that counsel for neither O'Reilly nor the defendants had seen the removal

---

[6] As Board member Lilliana Belardo de O'Neal explained during her testimony at the December 15, 2014 hearing, the Board of Elections has taken the position that, when a recount petition is granted, only the votes cast for the candidate who requested the recount are recounted, and not all votes cast for all candidates. (S.A. vol. 3 at 113.) As such, the granting of Capehart's recount petition would not have automatically resulted in Hansen's write-in votes being recounted. The fact that only Hansen and Capehart's votes were recounted — but not those cast for O'Reilly or the other candidates — was among the issues O'Reilly initially raised in her complaint (S.A. 41), but apparently withdrew when she amended her complaint to remove her equal protection and due process claims. (S.A. 59-60.) Because the issue was not addressed by the Superior Court in its December 24, 2014 opinion or asserted in the parties' appellate briefs, we express no opinion as to whether the Board's practice of recounting only votes cast for candidates who requested a recount — as opposed to recounting all votes cast for that office — is lawful, whether under Virgin Islands law or the United States Constitution.

[7] The defendants subsequently filed an answer on December 19, 2014.

document, the Superior Court declared a recess. When the hearing reconvened, the Superior Court provided counsel for the parties present an opportunity to be heard as to whether the hearing should proceed. None of the parties objected to proceeding with the hearing as scheduled, and the Superior Court stated that it believed this Court's opinion in *Bryan II*, as well as an earlier District Court opinion denying removal in that case,[8] provided support for holding the hearing because it held that the local court system possessed jurisdiction to hear local election cases.

At approximately 9:37 a.m., while Whitaker was still testifying on direct examination, Hansen's counsel entered the courtroom, and the Superior Court advised her of its earlier ruling to proceed with the hearing despite the notice of removal. Hansen objected on grounds that the federal removal statute prohibits a court from continuing to proceed after a notice of removal has been filed until and unless the District Court remands the matter, and the defendants then joined in that objection. When questioned as to the basis for invoking the federal removal statute, Hansen cited to language in O'Reilly's complaint that could be construed as raising due process and equal protection claims. O'Reilly, however, promptly withdrew any such claims. Thus, the Superior Court stood by its earlier decision, and Whitaker's testimony resumed, with Hansen's counsel participating.

The Superior Court also heard testimony from two members of the Board of Elections — Lilliana Belardo de O'Neal and Lisa Harris-Moorhead — before adjourning until December 17, 2014. Through O'Neal's testimony, O'Reilly introduced numerous documents into evidence, including the agendas of the St. Croix District Board of Elections meetings held on November 26, 2014, and December 3, 2014, as well as the roll-call sheets for those meetings indicating which members were present, what motions were brought, and how each member voted. O'Reilly also introduced into evidence a letter that the Board of Elections, through O'Neal in her capacity as the Board's Vice-Chair, sent to the Attorney General after the meeting concluded on November 26, 2014 — in which the Board asked for an advisory opinion as to whether the Board could act on Hansen's petition even though the three-day deadline to act had passed — as well as the Attorney General's

---

[8] *Bryan v. Fawkes*, 61 V.I. at 426 (D.V.I. 2014).

December 5, 2014 response stating that it was his opinion that the Board could vote on the petition out of time.[9]

After the hearing adjourned, Hansen filed a written motion for the Superior Court to reconsider its oral ruling declining to suspend all proceedings in light of the notice of removal, which was ultimately denied. When the hearing resumed on December 17, 2014, the Superior Court heard testimony from several other witnesses, including Board members Raymond Williams and Rupert Ross.[10] However, the various Board members provided conflicting testimony as to whether the roll-call sheets accurately reflected that no vote — whether timely or untimely — had ever been taken on Hansen's recount petition, and the Superior Court ordered the Board to file transcripts of its November 26, 2014 and December 3, 2014 meetings. Ultimately, those transcripts reflected that no vote had been taken on Hansen's recount petition. (S.A. 185-346.)

The Superior Court held another hearing on December 22, 2014, where it heard testimony from Supervisor of Elections Caroline Fawkes,[11] and permitted the parties to file post-hearing briefs. On December 23, 2014, the District Court issued an order *sua sponte* rejecting Hansen's notice of removal and remanding the matter back to the Superior Court; while it reasoned that it possessed jurisdiction, the District Court, relying on the abstention doctrine articulated in *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S. Ct. 643, 85 L. Ed. 971 (1941), held that the Superior Court was the appropriate forum to consider the claims raised in O'Reilly's lawsuit. *O'Reilly v. Bd. of Elections (O'Reilly I)*, Civ.

---

[9] In addition to this issue, the Attorney General's opinion also addressed the question of whether Hansen was a "candidate" for purposes of 18 V.I.C. § 629(a), advising that she did, in fact, meet the statutory definition.

[10] We note that, at the December 17, 2014 hearing, the Superior Court limited the evidence introduced by both O'Reilly and Hansen with respect to the conduct of the general election. For example, citing this Court's decision in *Bryan I*, the Superior Court refused to allow Hansen to raise the issue that votes cast for O'Reilly during the general election had purportedly been counted differently than those cast for Hansen. (S.A. vol. 4 at 108-09.) Given our decision to resolve this appeal on other grounds, we decline to address this issue as part of this appeal.

[11] The record reflects that Fawkes had been subpoenaed to testify on December 15, 2014, but failed to appear, which led the Superior Court to issue a warrant for her arrest and an order for her to show cause. (S.A. vol. 3 at 6.) The issue of Fawkes's failure to comply with the subpoena, however, is not before this Court as part of this appeal.

No. 2014-0107, 2014 U.S. Dist. LEXIS 176531, *9-17 (D.V.I. Dec. 23, 2014) (unpublished).

The Superior Court issued its decision the following day, December 24, 2014. First, the Superior Court agreed with O'Reilly that Hansen lacked standing to file a recount petition because she did not fall within the definition of a "candidate." *O'Reilly v. Bd. of Elections (O'Reilly II)*, 61 V.I. 118, 128-135 (V.I. Super. Ct. 2014). As such, the Superior Court issued a writ of mandamus, reasoning that the recount had been illegal. *Id.* at 141. Nevertheless, the Superior Court also addressed the other issues raised in O'Reilly's petition, and concluded that if Hansen had standing, O'Reilly's remaining claims would fail, and thus not warrant mandamus relief. *Id.* at 140.

Hansen filed a notice of appeal with this Court five days later on December 29, 2014. On December 31, 2014, this Court took judicial notice of the fact that the 31st Legislature is scheduled to be sworn-in on January 12, 2015, and that the Court would be closed from January 1 through January 6, 2015, due to various government holidays and administrative leave days. Because only three working days were available to render a decision, this Court expedited Hansen's appeal *sua sponte* and issued an expedited briefing schedule. Later on December 31, 2014, O'Reilly filed a notice of cross-appeal with this Court, noting that she was appealing from the portions of the Superior Court's December 24, 2014 opinion that were adverse to her so that she could challenge them in the event that this Court agreed with Hansen that she possessed standing to seek a recount. Pursuant to the expedited briefing schedule, all of the parties filed their principal briefs on January 5, 2015,[12] while Hansen and O'Reilly filed their reply briefs on January 7, 2015.[13]

---

[12] In their principal — and only — brief, the Board of Elections, its members, and the Government advised this Court that they "take[] no position on the merits of this appeal." (Gov't Br. 2.) As such, we consider only those issues that have been raised by Hansen and O'Reilly in their respective briefs.

[13] Although the Court was closed on January 5, 2015, due to the inauguration of the 8th elected Governor of the Virgin Islands, the Clerk of the Court made the appropriate arrangements to ensure that the parties' briefs could be accepted, served on the participants, and transmitted to the Justices on that date.

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

"The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court." 4 V.I.C. § 32(a). Because the Superior Court's December 24, 2014 opinion and order granted O'Reilly's petition for a writ of mandamus, it constitutes a final appealable judgment within the meaning of section 32(a). *See V.I. Gov't Hosps. & Health Facilities Corp. v. Gov't of the V.I.*, 50 V.I. 276, 279 (V.I. 2008) ("A final judgment, decision, or order is one that ends the litigation on the merits and leaves nothing to do but execute the judgment.").

"[T]his Court exercises plenary review over questions relating to the Superior Court's subject matter jurisdiction." *Brunn v. Dowdye*, 59 V.I. 899, 904 (V.I. 2013) (citing *Judi's of St. Croix Car Rental v. Weston*, 49 V.I. 396, 399 (V.I. 2008)). Likewise, this Court exercises plenary review over all issues of statutory construction. *V.I. Conservation Soc'y, Inc. v. Golden Resorts, LLLP*, 55 V.I. 613, 619 (V.I. 2011) (citing *V.I. Pub. Serv. Comm'n v. V.I. Water & Power Auth.*, 49 V.I. 478, 483 (V.I. 2008)).

### B. The Notice of Removal

■ In her appellate brief, Hansen alleges that the Superior Court lacked jurisdiction to proceed to trial because she had filed a notice of removal with the District Court minutes before the start of the December 15, 2014 hearing. According to Hansen, she possessed a right to remove O'Reilly's complaint from the Superior Court to District Court pursuant to the federal removal statute, 28 U.S.C. § 1441. Section 1441 — which only authorizes removal of cases from "State courts" to "district courts of the United States," *see* 28 U.S.C. § 1441(a) — does not itself provide for removal from the Superior Court to the District Court of the Virgin Islands, which are both Article IV courts, *Bryan II*, 61 V.I. at 438 (collecting cases). Nevertheless, Hansen alleges that the Revised Organic Act of 1954 extends section 1441 to the Virgin Islands, in that it provides that

> The relations between the courts established by the Constitution or laws of the United States and the courts established by local law with respect to appeals, certiorari, *removal of causes*, the issuance of writs

507

of habeas corpus, and other matters or proceedings shall be governed by the laws of the United States pertaining to the relations between the courts of the United States, including the Supreme Court of the United States, and the courts of the several States in such matters and proceedings.

48 U.S.C. § 1613 (emphasis added). Moreover, Hansen contends that there is absolutely no basis in this Court's *Bryan II* decision for the Superior Court to conclude that it could simply ignore a valid notice of removal. O'Reilly does not dispute that the federal removal statute applies with equal force to the Virgin Islands, nor does she attempt to defend the Superior Court's reasoning for its decision. However, O'Reilly alleges that Hansen's notice of removal was not a valid notice, in that 28 U.S.C. § 1446(a) unambiguously limits the right to remove a case only to a defendant, and that Hansen, as an intervenor, lacked the authority to unilaterally remove the case.[14]

We agree with Hansen that the Superior Court lacked the authority to disregard the notice of removal. Section 1613 unquestionably extends the federal removal statute to the Superior Court and the District Court. *Bryan II*, 61 V.I. at 438 (recognizing that Congress, acting pursuant to its powers under Article IV of the United States Constitution, defined the jurisdiction of the District Court and the Superior Court to mirror a federal-state court relationship); *see also Brown v. Francis*, 75 F.3d 860, 864, 33 V.I. 385 (3d Cir. 1996) (holding that 28 U.S.C. § 1441 is applicable to Virgin Islands courts pursuant to 48 U.S.C. § 1613). And although this Court held in its *Bryan II* decision that it was not bound to follow a permanent injunction of the District Court issued in a *second* case involving some of the same parties and the same issues as the *Bryan* proceeding, *see Payne v. Fawkes*, Civ. Nos. 2014-053 & 2014-055, 2014 U.S. Dist. LEXIS 134451 (D.V.I. Sept. 24, 2014) (unpublished), there is no second case here. While at one point the *Bryan* case had itself been removed to the District Court, at no point did the Superior Court conduct any proceedings while that removal was in effect. Rather, the

---

[14] Pursuant to the federal removal statute, "[w]hen a civil action is removed . . . all defendants who have been properly joined and served must join in or consent to the removal of the action." 28 U.S.C. § 1446(b)(2)(A). Although Hansen stated in her notice of removal that all of the defendants had consented to removal and would file written notices attesting to their consent with the District Court, none of the defendants did so prior to the District Court issuing its *sua sponte* opinion remanding the matter to the Superior Court.

Superior Court suspended all proceedings once it became aware of the notice of removal, and did not resume those proceedings until the District Court eventually remanded the case back to the Superior Court. *See Bryan II*, 61 V.I. at 432 (summarizing the procedural history of the *Bryan* litigation). Thus, there is nothing in the Bryan II opinion that authorized the Superior Court to ignore a notice of removal.

■ The federal removal statute unquestionably provides that once a notice of removal is filed and notice is provided to the clerk of the state court, "the State court shall proceed no further unless and until the case is remanded" by the district court. 28 U.S.C. § 1446(d). As such, the Superior Court committed error when, despite being advised that a notice of removal had been filed, it nevertheless chose to proceed with the scheduled hearing.

■ We also conclude that it is irrelevant whether Hansen possessed standing to file a notice of removal. Despite the plain language of section 1446 providing that only a defendant may file a notice of removal, several federal courts have held that an intervenor may remove a case if the intervenor's interests are aligned with the defendants. *See Tucker v. Equifirst Corp.*, 57 F. Supp. 3d 1347, 1349 (S.D. Ala. 2014) ("Intervenors may file notices of removal if they are properly aligned as defendants." (quoting 14C CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3730 (4th online ed. 2014))). Nevertheless, we need not interpret section 1446 as part of this appeal because it is well-established that the sufficiency or validity of a notice of removal is an issue that must be determined by the federal district court in the first instance. *See United States ex rel. Echevarria v. Silberglitt*, 441 F.2d 225, 227 (2d Cir. 1971) (holding that the removal procedure enacted by Congress does not permit any challenge to the validity of a notice of removal in state court) (citing *Miller v. Southern Bell Telephone & Telegraph Co.*, 279 F. 806, 809 (4th Cir. 1922)); *HBA East, Ltd. v. JEA Boxing Co., Inc.*, 796 S.W.2d 534, 538 (Tex. App. 1990) ("Under the federal statute, removal occurs when the proper filings are done in the federal district court and state court. If the removal procedure is defective . . . the remedy is remand. Until remand, however improvident a removal may have been, a cause remains removed." (citations omitted)). Thus, to the extent that O'Reilly believed that Hansen's notice of removal was defective, the appropriate remedy was not to move to amend her complaint in order to remove any potential federal claims so as to

undermine removal,[15] or to urge the Superior Court to disregard the notice and proceed with trial, but to enter an appearance in the District Court and move for a remand in that forum.

Nevertheless, the Superior Court's disregard of the December 15, 2014 notice of removal does not compel reversal in this case. As noted earlier, the District Court, in a well-reasoned opinion issued the day before the Superior Court issued its final judgment, *sua sponte* held that it would abstain from exercising jurisdiction over this case, and remanded the matter to the Superior Court. *O'Reilly I*, 2014 U.S. Dist. LEXIS 176531 at *10. Notably, the District Court acknowledged "that the case has been proceeding expeditiously in the Superior Court," and that accepting the notice of removal "would result in an unnecessary interruption of the ongoing proceedings in a matter that is clearly time-sensitive given the impending transition to the newly-elected Legislature." *Id.* at *15.

■■ When a trial court takes actions that exceed the scope of its jurisdiction because that jurisdiction was temporarily transferred to another tribunal, the decision to deny those proceedings legal effect "is grounded not in metaphysical notions regarding transfer of power, but on practical considerations concerning efficient judicial administration." *Harvey v. Christopher*, 55 V.I. 565, 569 n.2 (V.I. 2011) (quoting *Stebbins v. Stebbins*, 673 A.2d 184, 189-90 (D.C. 1996)). This is particularly true when, as here, the court that actually possessed jurisdiction does not expressly object to the other court's actions, despite being aware of them. *Williams v. People*, 58 V.I. 341, 351 n.8 (V.I. 2013); *Harvey*, 55 V.I. at 569 n.2; *accord Ottley v. Estate of Bell*, 61 V.I. 480, 497 (V.I. 2014) (holding that subsequent events may ripen otherwise premature court proceedings) (citing *Rohn v. People*, 57 V.I. 637, 642 n.4 (V.I. 2012)). In this case, declaring all Superior Court proceedings conducted between December 15 and December 23, 2014, a nullity, and in effect directing the Superior Court to hold a new trial and issue a new decision based on that trial — notwithstanding the fact that the District Court has already declined to exercise its removal jurisdiction and

---

[15] *See Hudson v. Thrasher*, No. 3:10-0963, 2011 U.S. Dist. LEXIS 27248, *3 (M.D. Tenn. Feb. 16, 2011) (unpublished) (holding that a motion to amend a complaint, filed in state court after a case has already been removed to federal court, "is essentially a nullity"); *Brown v. Kerkhoff*, 462 F. Supp. 2d 976, 980 (S.D. Iowa 2006) (after the notice of removal is filed with the state court, any subsequent state court proceeding "is a legal nullity") (collecting cases).

remanded the matter to the Superior Court — would serve absolutely no purpose other than additional expense and delay, since almost certainly the parties would produce the same evidence and the Superior Court would issue the same decision based on that evidence. Moreover, as the District Court noted in its remand order, this is a case in which time is of the essence, given that the 31st Legislature is scheduled to be sworn-in on January 12, 2015. Thus, while we would have been required to vacate all Superior Court proceedings if the District Court had declined to remand the matter, in light of its decision to abstain in favor of the Superior Court, we decline to do so here in the interest of justice and judicial economy. *Williams*, 58 V.I. at 351 n.8; *Harvey*, 55 V.I. at 569 n.2.

## C. Hansen's Standing to Petition for a Recount

We now turn to the issue of whether Hansen is a "candidate" for purposes of having standing to file a recount petition with the Board of Elections. In its December 24, 2014 opinion, the Superior Court acknowledged that Virgin Islands law provides that "[a] petition for a recount may be filed by any *candidate* in a primary or election who believes that there has been fraud or error committed in the canvassing or return of the votes cast at such primary or election." 18 V.I.C. § 629(a) (emphasis added). To determine the meaning of the word "candidate," the Superior Court first turned to 18 V.I.C. § 1, which defines numerous terms for purposes of title 18 of the Virgin Islands Code. The Superior Court noted, however, that section 1 did not provide a comprehensive definition of the word, but only stated that " 'candidate' includes a candidate for nomination and a candidate for election." 18 V.I.C. § 1(a). As such, the Superior Court turned to other provisions of the election laws for guidance.[16] Specifically, the Superior Court believed that section 625 of

---

[16] At the start of the December 15, 2014 hearing, O'Reilly introduced into evidence, through Whitaker's testimony, a document purportedly approved by the Joint Board of Elections on February 27, 2004, titled "Write-In Rules and Regulations." Those regulations contain a provision defining a "candidate" as "an individual who seeks nomination for election, or is elected, to any elective office of this Territory, whether or not such individual has formally or publicly announced his candidacy." (S.A. 103.) However, during cross-examination by Hansen, Whitaker testified that she was not aware whether those regulations had actually been adopted, and other subsequent witnesses also had no knowledge of whether the statutory formalities for adoption of regulations were ever followed subsequent to the Joint Board's approval. *See* 3 V.I.C. § 913 ("[N]o executive or administrative regulation, duly

title 18 of the Virgin Islands Code — a provision dealing with tabulation of election results — drew a distinction between "candidates" and "persons whose names are not on the ballot":

> At elections, the number of votes cast for each candidate by each political party or body by which he has been nominated, and for each independent candidate, shall be separately stated. In specifying any votes cast for persons whose names are not on the ballot, the election officers shall record any such names exactly as they were written or pasted to the ballot.

18 V.I.C. § 625. The Superior Court reasoned that, because the Legislature drew a distinction between "candidates" and "persons whose names are not on the ballot" for purposes of section 625, the use of the word "candidate" in section 629 was intended to exclude persons who receive write-in votes from being able to petition for a recount.[17] *O'Reilly II*, 61 V.I. at 134.

■ We agree with the Superior Court that not all individuals who *receive* write-in votes are candidates for purposes of section 625. However, the fact that not *all* individuals who receive write-in votes are candidates does not mean that *no one* who receives a write-in vote can be a candidate. The fact that an individual received a write-in vote for a particular office does not necessarily mean that the individual campaigned for the office or even would serve if elected. It is well-established that

---

promulgated and issued in accordance with authority granted by law, may have the force and effect of law unless it is approved by the Governor, filed and published as required by section 933 of this chapter, submitted to the Legislature as provided by subsection (b) of this section, and notice of the promulgation of the regulation, including a brief description of the subject matter thereof, has been published in at least one newspaper of general circulation."). Because we conclude that Hansen clearly falls within the definition of a "candidate" based solely on our examination of the provisions in the Virgin Islands Code, we do not decide, as part of this appeal, whether the "Write-In Rules and Regulations" approved by the Joint Board on February 27, 2004, are valid.

[17] In her appellate brief, Hansen urges this Court to consider Pennsylvania case law holding that write-in candidates in that jurisdiction possesses standing to seek a recount, based on a statement in a prior opinion of this Court that certain provisions of title 18 of the Virgin Islands Code were borrowed from Pennsylvania. *See Haynes v. Ottley*, 61 V.I. 547, 563-64 (V.I. 2014). However, unlike the statute analyzed in *Haynes*, the annotations accompanying sections 625 and 629 do not indicate that the statutes were borrowed from Pennsylvania, and an examination of the Pennsylvania case Hansen cites in her brief — *Dayhoff v. Weaver*, 808 A.2d 1002 (Pa. Commw. Ct. 2002) — reflects that the pertinent Pennsylvania statutes are markedly different from sections 625 and 629.

write-in voting often has an expressive element, such as registering a protest. *Cf. Burdick v. Takushi*, 504 U.S. 428, 438, 112 S. Ct. 2059, 119 L. Ed. 2d 245 (1992); *Edelstein v. City and County of San Francisco*, 29 Cal. 4th 164, 126 Cal. Rptr. 2d 727, 56 P.3d 1029, 1040-41 (2002). While several states, such as Hawaii, have passed laws prohibiting write-in votes entirely, *see, e.g., Burdick*, 504 U.S. at 437-39, or limiting write-in votes only to individuals who certify that they are willing to serve if elected, *see, e.g., Johnston v. Davidson County Election Comm'n*, No. M2011-02740-COA-R3-CV, 2014 Tenn. App. LEXIS 171, *20 (Tenn. Ct. App. Mar. 26, 2014) (unpublished),[18] the Virgin Islands Legislature has chosen to permit voters to cast write-in votes with no restrictions. As such, Virgin Islands voters may cast write-in votes for people who truly desire to serve if elected — like Hansen, who the record reflects conducted an active write-in campaign — and for those who would not serve, such as people who are already running for other offices, or who might not necessarily be people at all.[19] Rather than using the phrase "persons whose names are not on the ballot" as a means to distinguish between ballot candidates and write-in candidates, the more reasonable interpretation is that the Legislature recognized that some individuals who are not candidates may receive write-in votes cast in their favor, and that those results would still need to be tabulated.

■ ■ Other provisions in title 18 support this construction. Another provision of section 629, relating to who may be present within the recount area, appears to expressly distinguish between ballot candidates and write-in candidates, in that it provides that "[o]nly the candidates

---

[18] Other jurisdictions draw even further distinctions. For instance, Maine distinguishes between "declared" and "undeclared" write-in candidates, *see* ME. REV. STAT. ANN. tit. 21-A § 737-A, while Oregon does not individually tally write-in votes unless "the total number of write-in votes . . . equals or exceeds the number of votes cast for any candidate for the same nomination or office on the ballot." OR. REV. STAT. ANN. § 254.500.

[19] For example, the certified results for the 2014 senate election on St. Croix indicate that more than 200 write-in votes were cast for individuals other than Hansen, including a write-in vote for Kenneth E. Mapp, the ultimate winner of the gubernatorial election. Write-in votes were also cast for "Chuckless 2014," "Good Overevil," and "Alpha A. Omega." *See also* Jeanne M. Kaiser, *Constitutional Law — First Amendment — No Constitutional Right to Vote for Donald Duck: The Supreme Court Upholds the Constitutionality of Write-In Voting Bans in* Burdick v. Takushi, 15 W. NEW ENG. L. REV. 129, 148-49 (1993) (explaining why voters may wish to write-in votes for fictional characters or for real individuals who are not candidates for that particular office).

whose names appeared on the ballot in the election district, or a specific designee who is to be present on behalf of any such candidate, may remain within the recount area." 18 V.I.C. § 629(d). While we express no opinion as to whether the Legislature may permissibly discriminate between ballot and write-in candidates in such a manner, the fact that the Legislature used the phrase "candidates whose names appeared on the ballot" in section 629(d), yet used the broader phrase "any candidate" in section 629(a), provides further evidence that an individual may be a candidate even if his or her name does not appear on the ballot. After all, if the Legislature intended only for those whose names appeared on the ballot to be "candidates," the Legislature would have no reason to use the phrase "candidates whose names appeared on the ballot" in section 629(d), since all words after "candidates" would be mere surplusage and ineffective. *Duggins v. People*, 56 V.I. 295, 302 (V.I. 2012) ("When interpreting statutes, we must read the statute, to the extent possible, so that no one part makes any other portion ineffective.") (citing *Gilbert v. People*, 52 V.I. 350, 356 (V.I. 2009)).

We also cannot ignore that the Legislature has chosen a broader definition of the term "candidate" for the Territory's campaign finance laws. The Legislature, for purposes of chapter 29 of title 18, concerning limitations on and disclosures of campaign contributions, chose to define a "candidate" as "an individual who *seeks* nomination for election, or election, to any elective office of this Territory." 18 V.I.C. § 902(1) (emphasis added). While this definition cannot be directly imported into section 629 — given that section 902 states that it is defining terms solely for purposes of chapter 29 — it provides further evidence that considering the system of election-related statutes enacted by the Legislature, the intention to seek office, rather than placement on the ballot, should be the hallmark of whether one qualifies as a "candidate."[20] It is also unclear why the Legislature would impose upon individuals seeking office as write-in candidates all of the obligations of being a "candidate" but not

---

[20] Moreover, such a definition would be consistent with the dictionary definition of the word "candidate," which the Attorney General relied upon in his opinion letter to the Board advising that Hansen possessed standing to petition for a recount. *See* BLACK'S LAW DICTIONARY 219 (8th ed. 2004) (defining a "candidate" as "[a]n individual *seeking* nomination, election, or appointment to an office." (emphasis added)); *see also* 1 V.I.C. § 42 ("Words and phrases shall be read with their context and shall be construed according to the common and approved usage of the English language.").

confer upon them the same rights provided to other candidates, such as the right to seek a recount.[21]

Moreover, interpreting the word "candidate" in section 629(a) to exclude write-in candidates would result in unnecessary delays in the election process. As this Court has previously held, other avenues are available to challenge a decision of the Supervisor of Elections or the Board of Elections beyond those set forth in title 18 of the Virgin Islands Code.[22] *Haynes v. Ottley*, 61 V.I. 547, 565 (V.I. 2014). If we were to agree with the Superior Court that Hansen is not a "candidate" for purposes of section 629(a), it would not mean that Hansen would have no recourse if she believed there was fraud or error committed in the canvassing process. Rather, Hansen could still obtain redress by filing a lawsuit in the Superior Court, such as under the general writ of review statute, *see* 5 V.I.C. §§ 1421-23, or — as O'Reilly did in the present proceedings — by seeking a common-law remedy such as mandamus. *Haynes*, 61 V.I. at 569. The Superior Court's interpretation of section 629(a), however, would preclude the Board from granting Hansen a recount even if the Board agreed with her that fraud or error was present. Thus, the Superior Court's interpretation would compel Hansen to sue the Board and for a court to order the Board to provide the relief that it may have desired to provide her in the first place. We do not believe that the Legislature would have intended for section 629(a) to be interpreted in a way that would

---

[21] We also question whether the Superior Court's exclusion of write-in candidates from the definition of "candidate" would lead to absurd constructions of other election statutes. For example, section 2 of title 18 of the Virgin Islands Code states that government employees may not become "candidates for public office" unless they "take a leave of absence from [their] governmental duties" during their candidacy. 18 V.I.C. § 2. If an individual such as Hansen — who actively campaigned, and even provided the Board of Elections with notice of her write-in candidacy — does not qualify as a "candidate" for purposes of section 629(a), it would appear that such an individual would also not qualify as a "candidate" under section 2. Thus, the Superior Court's construction of section 629(a) would permit a government employee to run for office without taking a leave of absence from government employment, so long as the employee chose to wage a write-in campaign. Similarly absurd consequences stemming from the exclusion of write-in candidates from the definition of "candidate" may also extend to other provisions outside of title 18 where the word "candidate" is used without being defined. *See, e.g.*, 2 V.I.C. § 103 ("[N]o person may be a candidate for the one at large [senate] seat unless he will have been a bona fide resident of St. John for at least three consecutive years next preceding the general election.").

[22] For this reason, we reject Hansen's argument that the Superior Court also should have denied O'Reilly's mandamus petition because O'Reilly could purportedly only invoke the specific remedies set forth in title 18.

515

preclude the Board from exercising its regulatory function in such a way. *Accord, V.I. Narcotics Strike Force v. Gov't of the V.I.*, 60 V.I. 204, 213-14 (V.I. 2013). Thus, we hold that Hansen was a write-in candidate for the office of senator from the District of St. Croix, and therefore possessed standing to file a recount petition with the Board of Elections.[23]

## D. Failure of the Board of Elections to Act on the Recount Petition

Having concluded that the Superior Court erred in holding that Hansen lacked standing to file her recount petition, we now turn to O'Reilly's cross-appeal. In her appellate brief, O'Reilly maintains that she is nevertheless entitled to a writ of mandamus because even if Hansen possessed standing to file a recount petition, the Board of Elections never actually granted the petition, and that the recount of Hansen's votes was thus commenced illegally. We agree.

 Section 629 provides that upon the filing of a recount petition,

the board of elections for the district in which the recount is requested shall decide within 3 days whether the recount shall take place. *If the board decides in favor of the recount*, it shall cause notice of the recount to be given in a manner decided by it. The recount shall be held within 10 days after the filing of the petition and shall be public.

18 V.I.C. § 629(b) (emphasis added). At trial, O'Reilly argued that the Board never actually decided in favor of recounting Hansen's votes — as evidenced by the roll-call sheets and transcripts of the Board's November 26,

---

[23] During the Superior Court proceedings, as well as in her appellate brief, Hansen has asserted that this Court held in *Bryan II* that she must be treated as a "candidate" for purposes of section 629(a) because we stated that Hansen would be entitled under Virgin Islands law to "mount a write-in candidacy." 61 V.I. at 464. Although we agree with Hansen that she is a "candidate" as that term is used in section 629(a), we agree with the Superior Court's characterization of Hansen's reliance on this statement in the *Bryan II* opinion as being "without merit." *O'Reilly II*, 61 V.I. at 131. As the Superior Court correctly recognized, "the Supreme Court did not address the wording of Sections 625 or 629" in *Bryan II* and our "only reference to Title 18 in the context of write-in voting was [the] recognition that the Virgin Islands affords Hansen the opportunity to seek election through write-in votes." *Id.* The Superior Court's interpretation of our opinion is consistent with our long-standing instruction that "fleeting references" in opinions to issues that were never raised or discussed should not be cited as controlling authority. *Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967, 984 n.9 (V.I. 2011).

2014 and December 3, 2014 meetings[24] — and that in any event it also failed to comply with the three-day and 10-day deadlines in this statute. In its December 24, 2014 opinion, the Superior Court did not directly address O'Reilly's claim that the Board never voted to grant Hansen's petition, as opposed to merely considering it out of time. In its statement of the facts, the Superior Court noted that "[n]o notice was ever given to [Hansen] that her petition for a recount would be denied, so Hansen stated that she relied on the Board's statement that she was entitled to a recount."[25] *O'Reilly II*, 61 V.I. at 125. However, elsewhere in the opinion, the Superior Court emphasized the testimony of two members of the Board that "[t]he Board voted to allow Hansen to have a recount on November 26, 2014," *id.* at 124, and stated that "[o]n November 26, 2014, the Board voted to accept Hansen's petition despite the fact that it had not made a decision regarding the petition within the three days allowed by Section 629(b)," and then proceeded to hold that Hansen should not be penalized for the Board's decision to fail to comply with those deadlines. *Id.* at 138.

O'Reilly is correct that Board of Elections never actually ruled on the merits of Hansen's recount petition. As noted above, it is unclear how the Superior Court ruled on this issue; in its opinion, the Superior Court never expressly states that the recount petition was granted, instead stating only that the petition had been "accepted" by the Board of Elections on November 26, 2014. We can only infer, given its recitation of the factual background as well as the fact that it only addressed O'Reilly's argument that section 629(b)'s time limitations prohibited the Board from acting

---

[24] In her January 7, 2015 reply brief, Hansen asserts that these transcripts — which, as noted earlier, were transcribed by an official court reporter at the Superior Court's request from recordings submitted by the Board of Elections — were "unauthenticated hearsay" that should never have been considered, particularly given that the Superior Court, despite requesting their production, never formally admitted them into evidence. (Hansen Reply Br. 3.) Hansen, however, never challenged the admissibility of these transcripts in the principal brief she filed with this Court on January 5, 2015. Because Hansen has raised this issue for the first time in her reply brief — and thus deprived O'Reilly of an opportunity to respond — it is waived for purposes of this appeal, and this Court assumes that they were properly part of the Superior Court record. *Christopher v. People*, 57 V.I. 500, 513 n.7 (V.I. 2012) ("Any argument that is raised for the first time in a reply brief is considered waived, because the [opposing party] will not have a chance to respond.") (collecting cases).

[25] As we explain below, the transcript of the November 26, 2014 meeting of the Board of Elections reflects that Hansen was present at the meeting, and was informed by Board members that they would not decide her recount petition until it received an opinion from the Attorney General. Thus, we question the evidentiary basis for the Superior Court's finding.

without addressing her threshold argument that the Board never actually acted in the first place, that the Superior Court concluded that the Board voted to grant Hansen's petition on November 26, 2014, rather than to merely accept it for consideration out of time.

██ ██ Pursuant to section 629(b), only the Board of Elections may decide to hold a recount. Hansen, in her reply brief, asserts — without citing to any legal authority — that the issue of whether the Board of Elections actually ruled on her recount petition is a question of fact that this Court may only review for clear error. However, it is well-established that the question whether an administrative agency, such as the Board of Elections, has actually made a decision — as opposed to whether its decision is supported by substantial evidence — is a pure question of law over which this Court exercises plenary review.[26] *See Minard Run Oil Co. v. U.S. Forest Serv.*, 670 F.3d 236, 247 (3d Cir. 2011) (exercising *de novo* review over question whether an administrative agency's action was "final"); *Oregon Natural Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 979 n.1 (9th Cir. 2005) ("We . . . do not defer to the agency's position on whether agency action is final."); *Vedanta Soc'y of Southern California v. California Quartet, Ltd.*, 84 Cal. App. 4th 517, 100 Cal. Rptr. 2d 889, 901 (2000) (holding that "whether the board even made a decision" is "a pure question of law"). To determine the official action taken by an administrative agency or other deliberative body, this Court looks to its records, including written decisions memorializing its official actions. *Tip Top Constr. Corp. v. Gov't of the V.I.*, 60 V.I. 724, 735 (V.I. 2014); *accord State ex rel. Armbrecht v. Thornburg*, 137 W. Va. 60, 70 S.E.2d 73, 77 (1952) ("[T]his Court early adopted, and has continuously followed, a rule permitting the Court . . . to look to the journals and to other official records" and only turning to extrinsic evidence "in the event of patent ambiguity in such records"); *Rode v. Phelps*, 80 Mich. 598, McGrath 1244, 45 N.W. 493, 497 (1890) (declaring an act void because, even though it had been attested by the presiding officers of each chamber of the legislature and signed by the governor, inspection of official

_____

[26] In any event, even if we were to assume arguendo that this issue should be reviewed only for clear error, we would hold that the Superior Court's implicit finding that the Board voted to grant Hansen's recount petition at the November 26, 2014 meeting is "completely devoid of minimum evidentiary support displaying some hue of credibility." *Moore v. Walters*, 61 V.I. 502, 507 (V.I. 2014) (quoting *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007)).

legislative journals revealed that the bill submitted to the governor was, due to a scrivener's error, not the same bill that had passed the legislature). Significantly, "courts have repeatedly held that the *post hoc* observations of a single member of a deliberative body should ordinarily carry little, if any, weight," with respect to impeaching or clarifying its official records. *Tip Top Constr. Corp.*, 60 V.I. at 736-37 (collecting cases).

 In this case, the roll-call sheets for the November 26, 2014 and December 3, 2014 meetings of the St. Croix District Board of Elections show that no vote was taken as to whether Hansen's recount petition should be granted, even though numerous other motions were considered on the merits and voted upon, including recount petitions filed by two other candidates and one by a citizen. Nor do the official transcripts of those meetings — which were transcribed by an official court reporter from a recording submitted by the Board in response to a request from the Superior Court — reflect that any such vote ever took place. Rather, the only votes pertaining to Hansen that took place at the November 26 meeting were on (1) a motion to allow Hansen to address the Board, and (2) a motion to ask the Attorney General to provide an opinion as to whether the Board could act on Hansen's motion even though the statutory deadline for it to act had passed. Notably, the transcript reflects that an amendment had been added to the second motion directing Board staff to reconcile Hansen's votes into categories so that the Board would have a starting point to do a recount, if it were ultimately authorized. (S.A. 212.) The letter sent to the Attorney General on behalf of the Board immediately after the November 26, 2014 hearing provides further demonstration that no such vote took place, in that the letter expressly states that "the Board was divided as to whether the Board should make a decision beyond the due date," and specifically requests "an opinion as to whether the Board can act beyond Sec[tion] 629's time frame" so that the Board could "respond intelligently." (S.A. 127-28.) And when the Board met on December 3, 2014, it likewise took no action on Hansen's recount petition; the sole vote that in any way related to the issues raised by Hansen's recount petition involved a motion to implement an earlier decision of the Joint Board of Elections with respect to how write-in votes should be counted with respect to determining voter intent. (S.A. 135; 293-94.) In fact, the Board was not in receipt of the Attorney General's opinion letter until after the December 3, 2014 meeting concluded and the

recount of Hansen's votes had already commenced.[27] Simply put, the overwhelming and uncontradicted evidence in the Board's official records is that no vote on this issue ever took place, and there is absolutely no basis for the Superior Court to credit the contrary testimony of two Board members. *Tip Top Constr. Corp.*, 60 V.I. at 737.

We also agree with O'Reilly that the Board lacked the authority to rule on Hansen's recount petition after it failed to comply with the three-day period for ruling on a recount petition and the 10-day period for holding a recount, both established by section 629(b). As a threshold matter, we recognize that this Court considered a situation that appears similar on the surface in *Bryan I* after the Superior Court failed to comply with the deadlines found in 18 V.I.C. § 412, by failing to hold a hearing on the petition within 10 days and to issue a decision within 15 days of the hearing date. Notwithstanding the Superior Court's failure to comply with the law, we concluded that the parties should not be punished when the delay was solely attributable to the Superior Court's lack of diligence. *Bryan I*, 61 V.I. at 223 n.13.

Administrative agencies, however, are subject to different standards than courts, even when performing quasi-judicial or adjudicative functions. *Kelley v. Gov't of the V.I.*, 59 V.I. 742, 747 (V.I. 2013) ("[T]he grant of limited judicial authority to an administrative agency does not transform the agency into a court." (quoting *Ocean Hill Joint Venture v. N.C. Dept. of Envr., Health & Nat. Resources*, 333 N.C. 318, 426 S.E.2d 274, 276 (1993))). It is clear that administrative agencies may not take actions that are inconsistent with their enabling statutes. *Francis v. People*, 54 V.I. 313, 319-20 (V.I. 2010). This is particularly true with respect to election statutes, since such statutes are in derogation of

---

[27] In its opinion, the Superior Court states that the Board, at its December 3, 2014 meeting, "decided to begin recounting the votes, despite the fact that the Attorney General still had not provided the Board with a written opinion on the matter." *O'Reilly II*, 61 V.I. at 138. The Superior Court, however, cites to no portion of the record to support this proposition. Nor does Hansen, who in her brief simply cites to this portion of the Superior Court's opinion for the proposition that this occurred. On the contrary, the transcript of the December 3, 2014 meeting not only reflects that no vote was taken on Hansen's recount petition during the period in which it was discussed, but that the Board members understood that no vote had been taken. Notably, while the members of the Board did discuss when to commence a recount, it was in the context of Capehart and Joseph's recount petitions, which the Board had granted at its November 26, 2014 meeting.

the common law[28] and therefore must be strictly construed. *Defoe v. Phillip*, 56 V.I. 109, 121 (V.I. 2012). As the Appellate Division of the District Court recognized more than two decades ago:

> compliance with these statutory provisions is not at the discretion of the election officials. The record is replete with evidence illustrating the rather "laissez faire" approach of the Joint Board of Elections to the statutory mandate. Both the Joint Board of Elections and the Supervisor of Elections have a statutory duty to conduct elections in accordance with the statutory mandate.

*Bryan v. Todman*, No. 1993-0005, 1993 U.S. Dist. LEXIS 21461, *21 (D.V.I. App. Div. Oct. 29, 1993) (unpublished). While the Superior Court relied on the lower court decision in that same case for the proposition that the occurrences of the word "shall" in various sections in title 18 "were directive and not mandatory," *O'Reilly II*, 61 V.I. at 136 (quoting *Bryan v. Todman*, 28 V.I. 42 (V.I. Super. Ct. 1992)), the Appellate Division never endorsed this portion of the lower court opinion, but instead affirmed the result because the nature of the statutory violations by the Board of Elections were insufficient to warrant the extreme judicial remedy of a new election, since the harm caused by those particular statutory violations — consisting largely of claims that the Board did not provide sufficient voting machines, or assigned too many voters to the same polling district — did not justify "subverting the free expression of the voters' will." 1993 U.S. Dist. LEXIS 21461 at *21.

 The same cannot be said for the statutory provisions violated or the proposed remedy at issue in this case. "[A]n election contest is not merely a proceeding for the settlement of private rights," but "is a proceeding in which the people — the public — are primarily concerned." *Allen v. District of Columbia Bd. of Elections & Ethics*, 663 A.2d 489, 496 n.12 (D.C. 1995) (quoting *Johnson v. Russell*, 161 Kan. 203, 166 P.2d 568, 571 (1946)); *see also Bryan II*, 61 V.I. at 446 (holding that election protests and contents are *in rem* proceedings in which the *res* is the election itself) (collecting cases). While time elements in election statutes

---

[28] *See Roe v. State*, 43 F.3d 574, 577 n.4 (11th Cir. 1995); *Caruso v. City of Bridgeport*, 285 Conn. 618, 941 A.2d 266, 281 (2008); *State ex rel. Wilson v. Hart*, 583 S.W.2d 550, 551 (Mo. Ct. App. 1979); *Schloth v. Smith*, 134 Ga. App. 529, 215 S.E.2d 292, 293-94 (1975).

may be viewed as either directory or mandatory depending on the nature of the rights involved, *compare Petition of Anderson*, 12 Wis. 2d 530, 107 N.W.2d 496, 498-99 (1961) (absentee ballot deadline is directory due to interest in attempting to encourage and assist qualified electors to vote) *with Bohart v. Hanna*, 213 Ariz. 480, 143 P.3d 1021, 1023 (2006) (deadline to initiate a challenge to candidate's nomination paper is mandatory), it is clear that the public's interest in obtaining final election results in a timely manner after the general election is so exceptionally high so as to treat these deadlines as mandatory and non-waivable as applied to elections officials. *Wells v. St. Tammany Bd. of Election Sup'rs*, 916 So. 2d 212, 213 (La. Ct. App. 2005) (refusing to entertain election contest when statute provides that election officials must hold recount on the fifth day following the election and that date had already passed); *Petition of Jones*, 464 Pa. 152, 346 A.2d 260, 262-63 (1975) ("The integrity of the election process requires immediate resolution of disputes that prevent certification . . . . [C]ompliance with the statutorily imposed time limits is especially important in this area."); *Turtzo v. Boyer*, 370 Pa. 526, 88 A.2d 884, 886 (1952) ("It is because the lawmakers of the State were aware of the inertia inherent in an unestimated percentage of the population, and the great harm which can be visited upon others because of that inertia, that it categorically established time limits for the various procedures required in the operation of the Election Code. Unless time limits were set to challenge the results of election, government would perennially sit on a shaky foundation."); *Nelson v. Nash*, 126 W. Va. 568, 29 S.E.2d 253, 255 (1944), *overruled in part on other grounds by State ex rel. Smoleski v. County Court of Hancock Cnty.*, 153 W. Va. 21, 166 S.E.2d 777 (1969); *English v. Dickey*, 128 Ind. 174, 27 N.E. 495, 496-97 (1891) (holding board lost jurisdiction over recount proceeding when it failed to comply with statute mandating that recount be tried and determined within 20 days). Moreover, unlike the plaintiff in *Todman*, the remedy O'Reilly seeks — stopping an illegal recount and allowing the certified general election results to stand[29] — is not so extreme as to

---

[29] In her reply brief, Hansen proposes that 18 V.I.C. § 796 — a statute authorizing an individual who "willfully delays or causes to be delayed any election returns" to be fined or imprisoned — serves as the sole "statutory legal incentive necessary for the Election Board to timely comply with its obligations" under section 629(b). It is clear, however, that the phrase "election returns" refers to the report made by election officials as to the number of

outweigh the harm caused by the statutory violations; on the contrary, it is well-established that cancelling a recount is the appropriate remedy if a recount is found to be illegal.[30] *Bush v. Gore*, 531 U.S. 98, 110, 121 S. Ct. 525, 148 L. Ed. 2d 388 (2000).

In reaching our decision that the Board of Elections cannot waive the requirements of section 629(b), we emphasize that neither Hansen, nor any other candidate similarly situated, will be left without a vehicle to challenge election irregularities. In the administrative law context, it is common for agencies to be deemed to have denied petitions by operation of law by failing to issue a decision within the statutorily-mandated period. *See, e.g., Prosser v. Public Servs. Comm'n of the U.S.V.I.*, 56 V.I. 391, 398 (V.I. 2012); *cf. Ottley*, 61 V.I. at 490 (the failure of an administrator to act on a claim against an estate within the time required by statute constitutes a denial of the claim). While such a denial terminates the proceedings before the administrative agency, it allows the aggrieved party to challenge the agency's action in court. As such, upon the expiration of the three-day period, Hansen would have had the opportunity to file a lawsuit with the Superior Court within five days.[31] 18 V.I.C. § 629(c). And because Virgin Islands courts do not defer to the legal conclusions of the Board of Elections but instead apply a plenary standard of review, *Bryan I*, 61 V.I. at 223, seeking judicial relief

---

votes cast for each candidate. *See* 18 V.I.C. §§ 356, 625, 667(a); *see also Bonds v. Rogers*, 219 Ark. 319, 241 S.W.2d 371, 373 (1951) (stating that dictionary definition of "election returns" is the "formal report" of "the number of votes cast for each candidate, or . . . for or against the proposition voted on"). As such, section 796, by its own terms, does not criminalize the failure of members of the Board of Elections to decide a recount petition within the time limitations established in section 629(b).

[30] Hansen also notes in her reply brief that section 627 of title 18 of the Virgin Islands Code establishes deadlines for the Board of Elections to certify an election, and alleges that if this Court agreed with O'Reilly that the deadlines set forth in section 629(b) are mandatory, a failure of the Board to certify election results in the time provided for in section 627 "would simply void the election." (Hansen Reply Br. 7.) However, as noted above, we agree with the Appellate Division that the remedy for a violation of a mandatory election statute must be proportionate to the harm caused by the violation, with very few violations being serious enough to justify the extreme remedy of a new election. *Todman*, 1993 U.S. Dist. LEXIS 21461 at *21. As such, it is not clear to this Court why a failure to timely certify — without more — would compel a new election, as opposed to a lesser remedy.

[31] We note that section 629(c) states that "[i]f the board of elections decides not to approve the petition and grant the recount, it shall record the reasons for such decision." We do not interpret this language, however, as applying when the Board is unable to render a decision due to the expiration of the time limitations provided for in section 629(b).

once administrative relief has been denied by operation of law would not result in any prejudice, since the court would be required to apply the same standard that the Board should have applied if it had considered the petition on the merits.[32] Significantly, during the November 26, 2014 meeting, members of the Board of Elections advised Hansen of the uncertainty as to whether the Board could legally act on her recount petition given that the section 629(b) deadline for a ruling had lapsed, and that the Board, by requesting an opinion from the Attorney General, was not advising Hansen that she should not "go to court to preserve . . . [her] right," to which Hansen responded, "I know that."[33] (S.A. 209.)

 Section 629(b) expressly vests the decision to authorize a recount — an extraordinary action, given the expense and time involved — to the Board of Elections, and not to individual Board members or elections

---

[32] We recognize that, under this interpretation of section 629(b), it is possible that the individual the Board designates to accept recount petitions could, intentionally or through inadvertence, fail to transmit the petition to the full Board, and thus cause a recount petition to be denied by operation of law even if a majority of the Board would have been amenable to granting the petition. However, in the absence of any actual evidence that such an individual acted in bad faith, courts must presume that such officials have performed their duties correctly. *Public Emples. Rel. Bd. v. United Indus. Workers-Seafarers Int'l Union*, 56 V.I. 429, 438 n.4 (V.I. 2012) (collecting cases). In any event, excusing compliance with the statutory deadlines in all instances simply because of the possibility that an official might not perform a ministerial act in a timely manner would essentially render the statutory deadlines completely meaningless; to the extent an official does act in bad faith, that fact could be addressed as part of the appeal to the Superior Court provided for in section 629(c). For example, we note that at least one court has held that even mandatory deadlines set forth in an election statute may be waived upon evidence that literal compliance was impossible. *See Bingham v. Johnson*, 193 Ky. 753, 237 S.W. 1077, 1081-82 (Ky. Ct. App. 1922).

[33] In her reply brief, Hansen asserts that, were this Court to agree with O'Reilly that the Board never voted to grant her recount petition, "[i]t would violate her personal due-process rights" because it would be unfair "for the Election Board to affirmatively mislead her about its decision to conduct a recount." (Hansen Reply Br. 4-5.) This claim, however, is unsupported by the transcript of the November 26, 2014 meeting, in which members of the Board repeatedly advised her of the uncertainty as to whether a recount of her write-in votes could legally proceed given that the deadline set forth in section 629(b) had already lapsed. For example, in addition to the dialogue quoted previously, a Board member told Hansen that she should "talk to [her] attorney," and specifically told her that she may "want to protect [her] rights for that five-day period," referring to the five days to file a petition with the Superior Court pursuant to section 629(c) if a recount petition is denied. (S.A. 209.) Significantly, because her petition for a recount would have been denied by operation of law on November 24, 2014, Hansen — had she heeded the advice given to her at the November 26, 2014 meeting — still had sufficient time to file a timely petition with the Superior Court within section 629(c)'s five-day limitations period.

■■■■■■

staff, and even then only if the recount is authorized within three days of the filing of the petition and the recount is held within 10 days of the petition's filing.[34] As such, the recount that commenced on December 4, 2014, was unquestionably contrary to law.

■■■■ Because the recount was initiated with no legal authority, we conclude that O'Reilly was entitled to a writ of mandamus.[35] "To obtain a writ of mandamus, 'a petitioner must establish that it has no other adequate means to attain the desired relief and that its right to the writ is clear and indisputable.' " *In re Rogers*, S. Ct. Civ. No. 2014-0024, 2014 V.I. Supreme LEXIS 31, at *6 (V.I. May 27, 2014) (unpublished) (quoting *In re People of the V.I.*, 51 V.I. 374, 382 (V.I. 2009)). Because the recount was contrary to the plain language of section 629(b), in that it was never authorized by

---

[34] Because resolution of the issue would not change the outcome of this appeal, given that far more than 10 days have lapsed since the date Hansen filed her recount petition with the Board of Elections, we express no opinion as to whether the Board could have granted Hansen's petition after lapse of the initial three-day decision period, but before expiration of the 10-day period to commence the recount. *See Todman*, 1993 U.S. Dist. LEXIS 214641 at *20-21 (emphasizing that the remedy imposed must be proportionate to the harm to the public caused by the statutory violation); *cf. Middleton v. Moody*, 216 Ga. 237, 115 S.E.2d 567, 570 (1960) (excusing failure of members of recount committee to meet within 48 hours after their appointment when committee substantially complied with statutory requirements); *Bingham*, 237 S.W. at 1082 (excusing non-compliance with requirement that candidate file pre-election statement when individual did not become a candidate until after pre-election filing deadline, but timely filed a post-election statement).

[35] Hansen, in her principal brief, maintains that O'Reilly lacks standing to seek mandamus relief because "18 V.I.C. § 629 provides a statutory vehicle for a candidate to ask the Election Board for a recount" and "does not . . . authorize any other candidate to challenge the Election Board's decision to conduct a recount." (Hansen Br. 21-22.) As noted earlier, we conclude that the Board did not, in fact, vote to conduct a recount of Hansen's write-in votes, as is required by section 629(b). Nevertheless, as this Court has repeatedly emphasized, "statutes which are silent as to who has standing should be broadly interpreted to confer standing," *Bryan I*, 61 V.I. at 222 n.12 (citing *V.I. Narcotics Strike Force*, 60 V.I. at 212), and statutes that establish one mechanism through which an individual may bring a claim do not preempt other statutory or common-law remedies unless it is clear that the Legislature intended for that mechanism to constitute the exclusive remedy. *Haynes*, 61 V.I. at 561-564. In fact, this Court in *Haynes* expressly found that "prior to the adoption of title 18 of the Virgin Islands Code, it was held that '[a] petition for writ of mandamus is the proper legal action to correct errors made by the Elective Boards' " and that there was no indication that the Legislature intended to eliminate the common law writ of mandamus when it chose to enact title 18. *Id.* at 567 (quoting *In re Richardson*, 1 V.I. 301, 350 (D.V.I. 1936)). Because Hansen has failed to provide any legal argument as to why we should overturn our prior precedents, we find her argument that O'Reilly cannot initiate a mandamus proceeding to challenge the recount to be wholly without merit.

the Board, the clear and indisputable factor is satisfied. While O'Reilly theoretically possessed other means to attain the desired relief besides mandamus — such as initiating a proceeding under the general writ of review statute, *see* 5 V.I.C. §§ 1421-23, or the taxpayer injunction statute, *see* 5 V.I.C. § 80, or even allowing the recount to take place and challenging its legality only if it affected the outcome of the election — the "procedural rigor required in an ordinary mandamus case" is "somewhat relaxed" in election cases. *Deeds v. Lindsey*, 179 W. Va. 674, 371 S.E.2d 602, 608 (1988); *see also Gutierrez v. Guam Election Comm'n*, 2011 Guam 3 ¶ 29 (2011) (noting that certain mandamus requirements "may be greatly relaxed, if not virtually abandoned, where the question is one of public interest" (quoting *Residents of Beverly Glen, Inc. v. City of Los Angeles*, 34 Cal. App. 3d 117, 109 Cal. Rptr. 724, 731 (1973))). This is particularly true in a case such as this, where the recount commenced on December 4, 2014, and the 31st Legislature is scheduled to be sworn-in on January 12, 2015, with numerous government holidays falling between those dates.

█ But "even if the first two prerequisites have been met, the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances." *In re Joseph*, S. Ct. Civ. No. 2013-0015, 2013 V.I. Supreme LEXIS 14, at *8 (V.I. Apr. 5, 2013) (unpublished) (quoting *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380-81, 124 S. Ct. 2576, 159 L. Ed. 2d 459 (2004)). In its opinion, the Superior Court found that this third factor was satisfied because "mandamus is appropriate if statutory or regulatory standards . . . have been ignored or violated." *O'Reilly II*, 61 V.I. at 140 (quoting *Donastorg v. Gov't of the V.I.*, 45 V.I. 259, 273 (V.I. Super. Ct. 2003)). This is consistent with prior decisions of this Court, which have held that mandamus will be appropriate under the circumstances if the first two factors are satisfied and issuing the writ would effectuate the intent of the Legislature and the public interest by compelling obedience to a statute. *In re Elliot*, 54 V.I. 423, 432 (V.I. 2010). Although it issued a writ of mandamus based on an erroneous holding that section 629(a) precluded Hansen from filing a recount petition, the Superior Court's analysis of the third factor applies with equal weight to our conclusion that section 629(b) banned elections officials from commencing a recount in the absence of official action by the Board granting Hansen's recount petition. And given our holding in *Elliot*, the Superior Court would have abused its discretion were it to hold

that mandamus is not appropriate even though certain elections officials have clearly exceeded their jurisdiction by conducting a recount that had not been authorized by the Board of Elections. Therefore, rather than remand this case to the Superior Court so that it may determine whether the third factor is satisfied in light of our decision, we affirm its ultimate result to grant O'Reilly's mandamus petition. *Accord Harris v. Garcia*, S. Ct. Civ. No. 2008-0082, 2010 V.I. Supreme LEXIS 3, \*13 (V.I. Jan. 14, 2010) (unpublished) (declining to remand case to Superior Court to exercise its discretion when there is no way Superior Court could have denied the motion without abusing its discretion).[36]

## III. CONCLUSION

Although we agree with Hansen that the Superior Court exceeded its jurisdiction when it disregarded the notice of removal filed with the District Court, the error is harmless because the District Court remanded

---

[36] This Court, in a December 31, 2014 order, directed the parties to brief the issue of whether the Board of Elections should release the results of the recount, which the Superior Court noted had concluded on December 21, 2014, but were never made a part of the Superior Court record or otherwise released to the public. The purpose of our request was to determine whether this appeal could potentially be rendered moot if the results of the recount would not have changed the outcome of the St. Croix senatorial race. In their responses, every party to this appeal — including the Board of Elections itself — has stated that the results of the recount should be released not just to the Court, but to the public. In fact, counsel for the Board has represented that the recount results, if ultimately certified, would not have changed the outcome of the St. Croix senatorial election.

Since we have decided to address the legal questions raised in this appeal on the merits because they involve questions of public importance that may recur in future elections, *see Haynes*, 61 V.I. at 560, we have not ordered the Board to file the recount results with this Court. Nevertheless, given the agreement of all parties to this appeal — including the Board — that the recount results should be released to the public, we emphasize that our holding that the Board illegally initiated the recount of Hansen's write-in votes should not be construed as a statement that the Board should not release the results of the recount to the general public. *See* 3 V.I.C. § 881 (mandating public examination and media publication of all public records upon request, with limited exceptions); 18 V.I.C. § 629(b) (providing that recounts "shall be public"). On the contrary, the fact that the recount was conducted in violation of Virgin Islands law may provide even more of a reason to disclose recount-related materials, including the results of the recount, to the public. *Accord Shakman v. City of Chicago*, Case No. 69 C 2145, 2014 U.S. Dist. LEXIS 22971, \*15 (N.D. Ill. Feb. 21, 2014) (unpublished) (observing that "[w]eighing heavily in favor of disclosure is the serious public interest in sunshine" that could "root out and deter" the "illegal" practices of the government). We emphasize, however, that the unofficial results of the recount of Hansen's votes cannot alter the previously certified results of the general election, given our holding that the recount was conducted in violation of Virgin Islands law.

the matter to the Superior Court while acknowledging that proceedings in the Superior Court were ongoing. While we also agree with Hansen that the Superior Court erred when it held that she lacked standing to file a recount petition with the Board of Elections, we also agree with O'Reilly that the Superior Court erred when it implicitly held that the Board of Elections had granted Hansen's petition even though the Board's official records all indicated that it had not done so, and when it explicitly held that the Board could waive the statutory deadlines set forth in section 629(b). Accordingly, while the reasoning of the Superior Court's December 24, 2014 opinion was in error, we nevertheless affirm its ultimate decision to grant O'Reilly's petition for a writ of mandamus.